Ian M. Ross (admitted *pro hac vice*)
iross@sidley.com
**SIDLEY AUSTIN LLP**
1001 Brickell Bay Drive, Suite 900
Miami, FL 33131
Telephone: (305) 391-5100
Facsimile: (305) 391-5101

Sarah E. Gallo (SBN 335544)
sgallo@sidley.com
**SIDLEY AUSTIN LLP**
555 California Street, Suite 2000
San Francisco, CA 94104
Telephone: (415) 772-1200
Facsimile: (415) 772-7400

*Attorneys for Defendants*
*Elevate Labs, LLC and MindSnacks, Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| JONATHAN KROSKEY, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br>v.<br><br>ELEVATE LABS, LLC and MINDSNACKS, INC.<br><br>Defendants. | Case No. 5:24-cv-08113-EJD<br><br>Assigned to: Hon. Edward J. Davila<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date: April 17, 2025<br>Time: 9:00 a.m.<br>Location: Courtroom 4, 5th Floor<br><br><u>CLASS ACTION</u> |

# TABLE OF CONTENTS


**Page**

I. INTRODUCTION ....... 1

II. STATEMENT OF FACTS ....... 3

A. Plaintiff Agreed to Arbitrate Under the Balance App's Terms and Conditions ....... 3

B. Plaintiff's Claims Arise From the Arbitration Agreement ....... 5

III. LEGAL STANDARD ....... 5

IV. ARGUMENT ....... 6

A. Plaintiff Agreed to Arbitrate His Claims on an Individual Basis by Assenting to the Terms and Conditions of the Balance App ....... 7

B. Questions Of Arbitrability Or Enforceability Must Be Decided By An Arbitrator ....... 9

C. Plaintiff's Claims Plainly Fall Within the Scope of the Arbitration Agreement ....... 10

D. This Action Should Be Stayed Or Dismissed ....... 11

V. CONCLUSION ....... 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011)....5

*B.D. v. Blizzard Ent., Inc.*,
76 Cal. App. 5th 931 (2022)....8

*Belke v. Merrill Lynch, Pierce, Fenner & Smith*,
693 F.2d 1023 (11th Cir. 1982)....10, 11

*Blau v. AT&T Mobility*,
2012 WL 10546 (N.D. Cal. Jan. 3, 2012)....6

*Brennan v. Opus Bank*,
796 F.3d 1125 (9th Cir. 2015)....6

*Citizens Bank v. Alafabco, Inc.*,
539 U.S. 52 (2003)....5

*Contec Corp. v. Remote Sol., Co.*,
398 F.3d 205 (2d Cir. 2005)....10

*Dean v. OkCoin USA Inc.*,
2024 WL 3522207 (N.D. Cal. July 23, 2024)....8

*Dean Witter Reynolds, Inc. v. Byrd*,
470 U.S. 213 (1985)....6, 11

*Ghazizadeh v. Coursera, Inc.*,
737 F. Supp. 3d 911 (N.D. Cal. 2024)....8

*Goldman v. KPMG LLP*,
173 Cal. App. 4th 209 (2009)....11

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
586 U.S. 63 (2019)....6, 9, 10

*Johnmohammadi v. Bloomingdale's, Inc.*,
755 F.3d 1072 (9th Cir. 2014)....11

*Johnson v. Oracle Am., Inc.*,
2017 WL 8793341 (N.D. Cal. Nov. 17, 2017)....10

*JPay, Inc. v. Kobel*,
904 F.3d 923 (11th Cir. 2018)....10

*Keebaugh v. Warner Bros. Ent. Inc.*,
100 F.4th 1005 (9th Cir. 2024) ........................................................................2, 7, 8, 9

*Letizia v. Prudential Bache Sec., Inc.*,
802 F.2d 1185 (9th Cir. 1986) ..................................................................................11

*Loewen v. Lyft, Inc.*,
129 F. Supp. 3d 945 (N.D. Cal. 2015) .......................................................................11

*Louis Dreyfus Negoce S.S. v. Blystad Shipping & Trading, Inc.*,
252 F.3d 218 (2d Cir. 2001)......................................................................................10

*Marselian v. Wells Fargo & Co.*,
514 F. Supp. 3d 1166 (N.D. Cal. 2021) .....................................................................11

*Nicosia v. Amazon.com, Inc.*
834 F.3d 220 (2d Cir. 2016)........................................................................................6

*Oberstein v. Live Nation Ent., Inc.*,
60 F. 4th 505 (9th Cir. 2023) ....................................................................................8, 9

*Patrick v. Running Warehouse, LLC*,
93 F.4th 468 (9th Cir. 2024) ....................................................................................9, 10

*Peterson v. Lyft, Inc.*,
2018 WL 6047085 (N.D. Cal. Nov. 19, 2018) ............................................................11

*Schnabel v. Trilegiant Corp.*,
697 F.3d 110 (2d Cir. 2021)........................................................................................5

*Silva v. WhaleCo, Inc.*,
2024 WL 4487421 (N.D. Cal. Oct. 10, 2024)...............................................................8

*Smith v. Spizzirri*,
601 U.S. 472 (2024)...................................................................................................6

*Wilmot v. McNabb*,
269 F. Supp. 2d 1203 (N.D. Cal. 2003) .....................................................................11

**Statutes**

9 U.S.C. § 1, *et seq.* (Federal Arbitration Act, "FAA")........................................................ *passim*

9 U.S.C. § 2...............................................................................................................5

9 U.S.C. § 3...........................................................................................................2, 11

9 U.S.C. § 4.............................................................................................................2, 6

Cal. Pen. Code § 631...................................................................................................1

California Civil Code § 1799.3 .......... 1

**Rules**

Rule 8(b), JAMS Streamlined Arbitration Rules & Procedures .......... 4, 10

Rule 11(b), JAMS Comprehensive Arbitration Rules & Procedures .......... 4, 9

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

Please take notice that on April 17, 2025, at 9:00 a.m., defendants Elevate Labs, LLC ("Elevate") and MindSnacks, Inc. ("MindSnacks") (collectively, "Defendants" or "Balance"), will bring for hearing this Motion to Compel Arbitration, before the Honorable Judge Edward J. Davila, San Jose Courthouse, Courtroom 4, 5th Floor, 280 South First Street, San Jose, CA 95113.

Defendants hereby do move the Court for an Order dismissing all claims in Plaintiff Jonathan Kroskey's Class Action Complaint (the "Complaint") (ECF 1) in favor of arbitration pursuant to Federal Rule of Civil Procedure 12[1] and the Federal Arbitration Act, 9 U.S.C. § 1, *et seq*, or, alternatively, staying all proceedings in this action pending conclusion of the arbitration.

This Motion is based on this Notice, the Memorandum of Points and Authorities and attached exhibits, the complete files and records of this action, and such other matters and arguments as may come before this Court, including those raised in connection with reply briefing and oral argument.

## STATEMENT OF ISSUES PRESENTED

Whether Plaintiff's claims for relief for purported violation of the VPPA, California Civil Code § 1799.3, and the California Information Privacy Act, Cal. Pen. Code § 631 ("CIPA") should be dismissed or stayed in favor of arbitration pursuant to the FAA.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

When Plaintiff signed up for Defendants' mobile application (the "Balance App" or the "App"), he signed an individual, binding arbitration agreement and thus consented to arbitrate any potential dispute with Defendants. He also agreed that an arbitrator, not the Court, would decide any questions relating to the scope or validity of his arbitration agreement. Yet he now has filed this putative class action in federal court. Therefore, this Court need only decide whether the arbitration agreement Plaintiff assented to is

[1] Courts in this Circuit generally agree that a motion to compel arbitration is a Rule 12(b) motion. *See Lemberg v. LuLaRoe, LLC*, 2018 WL 6927836, at *3 (C.D. Cal. Mar. 1, 2018) (citing cases).

enforceable. It is.

When Plaintiff created his account on the Balance App, he agreed to the "Terms & Conditions" displayed clearly and conspicuously at the bottom of the sign-up page:




*See* Declaration of Kirsty Walls ("Walls Decl.") ¶¶ 5-7. These Terms & Conditions—which contain an arbitration agreement—were hyperlinked in bold on the Balance App, and Plaintiff continued creating his account after navigating to a page that explicitly states: "By creating your account, you agree to Balance's **Terms & Conditions** and **Privacy Policy**." *Id.* In these Terms & Conditions, the parties agreed to arbitrate disputes using JAMS arbitration rules, which require any disagreement over the scope or interpretation of the arbitration agreement to be resolved by the arbitrator. *See infra* at 3-4.

The Ninth Circuit has held these types of "sign-in wrap" or "clickwrap" agreements are enforceable where the disclosure provides reasonable notice of the terms and the consumer takes some action—here, clicking a button—to manifest assent to those terms. *Keebaugh v. Warner Bros. Ent. Inc.*, 100 F.4th 1005, 1014 (9th Cir. 2024) (citation omitted); *see also infra* at pp. 7-8 (citing case law). Accordingly, pursuant to Sections 3 and 4 of the Federal Arbitration Act, *see* 9 U.S.C. §§ 3, 4, Defendants

respectfully request that the Court compel arbitration of this matter and stay this action pending the arbitration.

## II. STATEMENT OF FACTS

### A. Plaintiff Agreed to Arbitrate Under the Balance App's Terms and Conditions

Defendants are affiliated entities that, through Balance, own and operate a mobile meditation application called Balance: Meditation & Sleep. Walls Decl. ¶ 2. Balance provides users guided meditations, among other products, via the Balance App. In July of 2023, Plaintiff subscribed to a paid membership of the Balance App. *Id*. at ¶¶ 4-5; ECF 1 at ¶ 9. While signing up for a membership, Plaintiff was directed to an account creation page on the Balance App. The bottom of this page reads: "By creating your account, you agree to Balance's **Terms & Conditions** and **Privacy Policy**." Walls Decl. ¶ 6. The sign-up page to which Plaintiff was directed to create an account appeared in the same form as this partial screenshot:




*Id.* ¶¶ 6-7. Users, including Plaintiff, cannot complete the membership sign-up process without affirmatively agreeing to the Terms & Conditions ("Terms") and Privacy Policy linked at the bottom of the screen. *Id* ¶ 6. The phrase "Terms and Conditions" is bolded and hyperlinked such that the Terms are easily accessible and can be reviewed by clicking anywhere on the bolded phrase. *Id.* ¶ 7.

The Terms Plaintiff agreed to contain an Arbitration Notice and comprehensive arbitration provision (the "Arbitration Agreement"). *See id.* ¶ 9, Ex. B. First, an italicized notice located near the top on the Terms makes the following disclosure:

> *Unless you opt of arbitration within 30 days of the date you first agree to those terms, you agree that (1) you will only be permitted to pursue claims against Balance on an individual basis, not as a plaintiff or class member in any class or representative action or proceeding, (2) you will only be permitted to seek relief (including monetary, injunctive, and declaratory relief) on an individual basis, and (3) you may not be able to have any claims you have against us resolved by a jury or in a court of law.*

*Id.* Ex. B at 1 (emphasis in original).[2] Second, a separately indented section titled in bold, "**Arbitration**," is presented with the following initial message: "**Dispute Resolution by Binding Arbitration: PLEASE READ THIS SECTION CAREFULLY AS IT AFFECTS YOUR RIGHTS**." *Id.* at 15 (emphasis in original).

The Arbitration Agreement provides the following scope: "At Balance's or your election, all disputes, claims, or controversies ***arising out of or relating to the Terms of Service or the Service*** that are not resolved by mutual agreement may be resolved by binding arbitration to be conducted before JAMS, or its successor." *Id.* (emphasis added). The Terms define the "Service" as Defendants' "mobile applications and related services," including the website, and any new features and applications. *Id.* at 1.[3] The Arbitration Agreement also provides that any arbitration shall be "conducted in accordance with the rules and regulations promulgated by JAMS unless specifically modified in the Terms of Service." *Id.* at 15. Under the JAMS rules for consumer arbitrations, the JAMS-appointed arbitrator must decide any disputes regarding the formation, existence, validity, interpretation, or scope of an arbitration agreement. Rule 11(b), JAMS Comprehensive Arbitration Rules & Procedures ("Jurisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the

---

[2] Defendants have no record of Plaintiff opting out of the Arbitration Provision. Walls Decl. ¶ 10.

[3] Under the Arbitration Provision, Plaintiff waived his right to pursue claims as a class action or on a representative basis. *Id.* Ex. B at 1, 15. Defendants reserve the right to seek to strike the class allegations from the Complaint.

agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator. The Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter."); Rule 8(b), JAMS Streamlined Arbitration Rules & Procedures (same).

### B. Plaintiff's Claims Arise From the Arbitration Agreement

Plaintiff agreed to JAMS procedures and rules, which delegate any questions regarding the validity or scope of the Arbitration Agreement to an arbitrator. Consequently, Defendants respectfully submit that Plaintiff may not argue that his claims fall outside the scope of the Arbitration Agreement. Nonetheless, and without waiver of Defendants' right to have the arbitrator decide this issue, Defendants respectfully submit that Plaintiff's claims clearly relate to or arise out of his use of Defendants' "Services," specifically, the Balance App. Likewise, the class that Plaintiff purports to represent are "[a]ll persons in California who subscribed to Defendants' Balance Mediation App service" who purportedly "(1) watched a pre-record video on the App and had their PII and video-viewing information disclosed to a third party and (2) answered Defendants' Survey and had their confidential communications intercepted by a third party while in California." ECF 1 at ¶ 69. Any purported disputes by any putative class member, as defined here, also relate to or arise out of their use of the Services and thus are subject to arbitration.

## III. LEGAL STANDARD

Section 2 of the Federal Arbitration Act ("FAA") provides that an arbitration agreement provision in any contract involved in interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; *see also AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 336 (2011). The FAA applies to any arbitration agreement that is "written" and that is in a contract evidencing "a transaction involving commerce." 9 U.S.C. § 2; *see Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003) ("[T]he term 'involving commerce' in the FAA [is] the functional equivalent of the more familiar term 'affecting commerce'–words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power.").[4] Once a

[4] Both criteria are met here: the parties' agreement(s) are (1) in writing and (2) part of a contract related to Plaintiff's membership in a national brand of mental fitness and online services, including his use of

court determines that the parties to a litigation agreed to arbitrate, the FAA gives the court no discretion; rather, it must compel the parties to arbitrate and stay the action pending the outcome. *See Smith v. Spizzirri*, 601 U.S. 472, 475-76 (2024); *see also Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985).

While under the FAA courts ordinarily determine whether a dispute falls within the scope of an arbitration provision, "parties may agree to have an arbitrator decide not only the merits of a particular dispute but also…'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 67-68 (2019) (cleaned up). In such cases, the court looks to whether the parties "clearly and unmistakably" gave such authority to the arbitrator. *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015); *see also Schein*, 586 U.S. at 67-68. Where an arbitration agreement "delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue." *Schein*, 586 U.S. at 69; *Brennan*, 796 F.3d at 1130.

When parties enter into arbitration agreement and one party fails to comply, the aggrieved party may petition the court "for an order directing that such arbitration proceed in the manner provided in such agreement." 9 U.S.C. § 4. "[U]pon being satisfied that the making of the agreement for arbitration . . . is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." *Id.* The burden then shifts to the party opposing arbitration to put "the making of that agreement 'in issue.'" *Blau v. AT&T Mobility*, 2012 WL 10546, at *3 (N.D. Cal. Jan. 3, 2012) (citation omitted).

## IV. ARGUMENT

The Court should enforce the Arbitration Agreement between the parties and either dismiss or stay this action. Plaintiff entered into a valid and enforceable agreement to arbitrate. Furthermore, the parties have explicitly agreed under the Arbitration Agreement to delegate any questions regarding the scope or

---

the website, which clearly involves and affects interstate commerce. *See, e.g., Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 114-16 (2d Cir. 2021) (applying FAA to membership in online programs); *Nicosia v. Amazon.com, Inc.* 834 F.3d 220, 229 (2d Cir. 2016) (applying FAA to website purchases).

enforceability of the agreement to a JAMS-appointed arbitrator. Accordingly, the Court should grant Defendants' Motion.

### A. Plaintiff Agreed to Arbitrate His Claims on an Individual Basis by Assenting to the Terms and Conditions of the Balance App

Federal courts apply state law principles to the issue of contract formation. *Keebaugh*, 100 F.4th at 1013-14 (9th Cir. 2024) (citation omitted). "To form a contract under California law, there 'must be actual or constructive notice of the agreement and the parties must manifest mutual assent.'" *Id.* at 1014 (quoting *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 510 (9th Cir. 2023). A sign-in wrap agreement gives adequate inquiry notice to users if "(1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his assent to those terms." *Keebaugh*, 100 F.4th at 1014 (citation omitted).[5] When evaluating sign-in wrap agreements, courts must first evaluate "the full context of the transaction and consider whether that type of transaction contemplates entering into a continuing, forward looking relationship governed by terms and conditions." *Id.* at 1017 (citing *B.D. v. Blizzard Ent., Inc.*, 76 Cal. App. 5th 931, 950 (2022)) (internal quotations omitted) (enforcing arbitration clause and holding that users contemplated entering into a continuing, forward-looking relationship governed by terms and conditions when users downloaded and used a gaming app that informed users that by pressing the "Play" button below the terms, they agreed to the Terms of Service).

"When downloading an app to one's own device," as opposed to accessing a website, "the prudent internet user necessarily anticipates ongoing access to that app at the user's discretion. . . . An app is different from a typical one-and-done interaction between the user and a traditional website [because] the app's presence on the phone until deleted carries the connotation that the user will also have ongoing access to that app unless something material changes." *Id.* at 1020. When a consumer signs up for an ongoing account, such as through an app, "it is reasonable to expect that the typical consumer in that type

---

[5] A "sign-in wrap" agreement occurs when a user signs up for an internet product or service and the sign-in screen states that acceptance of a separate agreement is required before the user can access the service. *Keebaugh*, 100 F.4th at 1014.

of transaction contemplates entering into a continuing, forward-looking relationship" governed by terms and conditions. *Blizzard*, 76 Cal. at 951 (reversing the denial of a motion to compel arbitration where the Plaintiff frequently accessed the online platform, purchased add-ons, and "spent approximately 50 hours playing . . . over the course of approximately two years."). Further, Courts in this Circuit—as recently confirmed by the Ninth Circuit Court of Appeals—have held that a website or mobile application provides reasonably conspicuous notice, and thus represents an enforceable sign-in wrap agreement, when the notice is presented in such a way that "a reasonably prudent Internet user would have seen it." *Keebaugh*, 100 F.4th at 1014 (enforcing arbitration clause in terms where the notice is visually clear, directly beneath the operative Play button, and displayed in a contrasting font color to the interface background); *see also Oberstein*, 60 F. 4th at 516 (holding that "a reasonable user would have seen the notice and been able to locate the Terms via hyperlink" when the notice is "conspicuously displayed directly above or below the action button" and "the language clearly denotes that continued use will act as a manifestation of the user's intent to be bound" (citation omitted)).

Here, Plaintiff's assent to the Arbitration Agreement occurred when he continued to create his account after being presented with a conspicuous, bolded disclosure on the Balance App's sign-up page, where the **Terms & Conditions** and **Privacy Policy** appeared in bold and were hyperlinked in a contrasting, dark font. By clicking anywhere on those bolded words, Plaintiff could have reviewed the terms and conditions and privacy policy associated with his Balance App account before agreeing to create that account. Walls Decl. ¶ 7. Further, the sign-up page provided that "[b]y creating your account, you agree to Balance's Terms and Conditions." *Id.* at Ex. A. Courts have consistently enforced arbitration clauses disclosed in a similar manner. *See, e.g.*, *Silva v. WhaleCo, Inc.*, 2024 WL 4487421, at *4 (N.D. Cal. Oct. 10, 2024) (enforcing arbitration agreement where disclosure below sign-up button was "large enough to read" and "stands out from the surrounding text"); *Dean v. OkCoin USA Inc.*, 2024 WL 3522207, at *4 (N.D. Cal. July 23, 2024) (holding the same where terms were bolded and treated "in contrast to almost all other text on the page"); *Ghazizadeh v. Coursera, Inc.*, 737 F. Supp. 3d 911, (N.D. Cal. 2024) (holding the same where the sign-in screen "lacked clutter" and the "designed elements used 'a contrasting font color' making the notice legible") (quoting *Keebaugh*, 100 F.4th at 1020-21).

Like in *Keebaugh*, *Oberstein*, and the other decisions cited here, Plaintiff was required to assent to the terms when he continued to create his account from the sign-up page of the Balance App. Walls Decl. Ex. B at 1, 15. Plaintiff's creation of an account and continued use of the App manifested his intent to be bound by the agreement's terms. *Id.* Ex. B; *Oberstein*, 60 F. 4th at 516. Plaintiff not only created his account, but signed up for a paid membership and, by his own admission, frequently visited the App for guided meditation exercises during his subscription period. ECF 1 at ¶ 65. No reasonably prudent internet user would consider downloading and repeatedly using an app an "insular and discrete one-time transaction." *Keebaugh*, 100 F.4th at 1020. As such, Plaintiff's creation of an account and frequent use of the App expressed his acknowledgement and acceptance of its Terms and his desire to enter into a continuing, forward-looking relationship governed by such Terms. *Id.* at 1017.

### B. Questions Of Arbitrability Or Enforceability Must Be Decided By An Arbitrator

Parties may also agree to have an arbitrator decide "'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Henry Schein, Inc.*, 586 U.S. at 67-68 (cleaned up). Where an arbitration agreement expressly incorporates the rules of an arbitration association, the rules of the association apply with respect to whether the arbitrator or court will decide threshold issues of arbitrability and scope. *Id.* The Ninth Circuit has held that "[i]ncorporation of the JAMS arbitration rules by reference constitutes clear and unmistakable evidence that the parties agree to arbitrate arbitrability." *Patrick v. Running Warehouse, LLC*, 93 F.4th 468, 481 (9th Cir. 2024) ("[b]y agreeing to an arbitration provision that incorporates JAMS Rules, and particularly in light of the language of JAMS Rule 11(b), the Court finds that the parties clearly and unmistakably delegated the question of arbitrability to JAMS"). *Id.* at 481 (citation omitted).

Here, the Arbitration Agreement expressly incorporates the JAMS rules, including JAMS Rule 11(b).[6] Accordingly, under *Patrick* and other case law enforcing similar language, Plaintiff agreed to

---

[6] The Arbitration Agreement requires that any arbitration proceedings "may be resolved by binding arbitration to be conducted before JAMS, or its successor" and "will be conducted in accordance with the rules and regulations promulgated by JAMS unless specifically modified in the Terms of Service." JAMS Comprehensive Arbitration Rules & Procedures 11(b) states that ***"[j]urisdictional and arbitrability***

delegate any dispute relating to scope or arbitrability to the JAMS-appointed arbitrator when he assented to the Arbitration Agreement. *See, e.g. Johnson v. Oracle Am., Inc.*, 2017 WL 8793341, at *6-9 (N.D. Cal. Nov. 17, 2017) (enforcing arbitration agreement that incorporated AAA and JAMS rules; finding no distinction between incorporation of AAA rules and incorporation of JAMS rules for purposes of assessing intent to arbitrate); *see also JPay, Inc. v. Kobel*, 904 F.3d 923, 937 (11th Cir. 2018) (finding that Eleventh Circuit precedent uniformly finds the incorporation of AAA rules as clearly evidencing the parties' intent to delegate). Accordingly, any arguments raised by Plaintiff with respect to whether his claims are covered by his Arbitration Agreement must be arbitrated. *Henry Schein, Inc.*, 586 U.S. at 69; *Contec Corp. v. Remote Sol., Co.*, 398 F.3d 205, 211 (2d Cir. 2005) (same).

**C. Plaintiff's Claims Plainly Fall Within the Scope of the Arbitration Agreement**

To the extent that Plaintiff seeks to avoid the delegation (via the JAMS Rules) of any dispute regarding the scope or validity of the Arbitration Agreement to the arbitrator, Defendants respectfully submit (without waiver of the parties' agreement to use JAMS rules) that the scope of the Arbitration Agreement clearly encompasses Plaintiff's disputes. The Arbitration Agreement broadly covers "all disputes, claims, or controversies ***arising out of or relating to the Terms of Service or the Services***," and "Services" is expressly defined to include the Balance App. Walls Decl. Ex. B at 1, 15 (emphasis added). The Ninth Circuit and other appeals courts have construed similarly broad provisions regarding "all" claims related to an agreement in favor of compelling arbitration. *Patrick*, 93 F.4th at 475 (holding that an agreement to arbitrate "any and all claims" between the parties "arising from or relating in any way to your use or purchase of products or services through the website or services" is enforceable); *Louis Dreyfus Negoce S.S. v. Blystad Shipping & Trading, Inc.*, 252 F.3d 218, 225 (2d Cir. 2001) (holding that broad construction is given to clauses that provide for arbitration of "[a]ny dispute"); *Belke v. Merrill Lynch, Pierce, Fenner & Smith*, 693 F.2d 1023, 1028 (11th Cir. 1982) ("An arbitration clause covering

---

***disputes, including disputes over the formation, existence, validity, interpretation or scope*** of the agreement under which Arbitration is sought, . . . ***shall be submitted to and ruled on by the Arbitrator.*** The Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter." (emphasis added); *see also* Rule 8(b), JAMS Streamlined Arbitration Rules & Procedures (same).

disputes arising out of the contract or business [relationship] between the parties evinces a clear intent to cover more than just those matters set forth in the contract."), *overruled on other grounds by Dean Witter*, 470 U.S. at 213.

Plaintiff's claims "aris[e] out of or relat[e] to" the Terms and Services and are therefore within the scope of the Arbitration Agreement. Walls Decl. Ex. B. at 15. Furthermore, although the Terms do not explicitly reference MindSnacks, MindSnacks is an affiliate of Balance. It is well established that affiliates or non-signatories can enforce an arbitration agreement against signatories where, as here, the Plaintiff's claims against Defendants are intertwined with the contract providing for arbitration. *E.g.*, *Letizia v. Prudential Bache Sec., Inc.*, 802 F.2d 1185, 1187 (9th Cir. 1986); *Marselian v. Wells Fargo & Co.*, 514 F. Supp. 3d 1166, 1172 (N.D. Cal. 2021) (summarizing cases where non-signatories were entitled to enforce arbitration agreements); *Wilmot v. McNabb*, 269 F. Supp. 2d 1203, 1208 (N.D. Cal. 2003) (same). Likewise, MindSnacks would also be entitled to enforce the Arbitration Agreement under principles of equitable estoppel, as Plaintiff accepted the benefits of the Balance App and his own pleading reflects his understanding that Defendants are affiliated, and thus should not be permitted to deny the Terms he agreed to when signing up to use the Balance App. *See Goldman v. KPMG LLP*, 173 Cal. App. 4th 209, 225-26 (2009). Accordingly, the FAA "leaves no place for the exercise of discretion by a district court . . . [,]" and the Court should find that Plaintiff's claims are within the ambit of the Arbitration Agreement. *Dean Witter*, 470 U.S. at 218.

**D. This Action Should Be Stayed Or Dismissed**

The Court "may either stay the action or dismiss it outright when, as here, the court determines that all of the claims raised in the action are subject to arbitration." *Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1073-74 (9th Cir. 2014). Dismissal is often the most efficient path forward when there is no "compelling reason to keep this case on the Court's docket." *Loewen v. Lyft, Inc.*, 129 F. Supp. 3d 945, 966 (N.D. Cal. 2015); *see also Peterson v. Lyft, Inc.*, 2018 WL 6047085, at *6 (N.D. Cal. Nov. 19, 2018) (granting motion to compel arbitration and dismissing case). At a minimum, the FAA requires that this case be stayed "until such arbitration has been had" in accordance with the terms of the Arbitration Agreement. 9 U.S.C. § 3.

## V. CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant their motion to compel Plaintiff to arbitrate his claims against Defendants on an individual basis and to dismiss or, in the alternative, stay the case pending arbitration.

Dated: January 24, 2025

**SIDLEY AUSTIN LLP**

By: /s/ *Sarah E. Gallo*
Sarah E. Gallo (SBN 335544)
sgallo@sidley.com
555 California Street, Suite 2000
San Francisco, CA 94104
Telephone: (415) 772-1200

Ian M. Ross (admitted *pro hac vice*)
iross@sidley.com
1001 Brickell Bay Drive, Suite 900
Miami, FL 33131
Telephone: (305) 391-5100

*Attorneys for Defendants*
*Elevate Labs, LLC and MindSnacks, Inc.*