**BURSOR & FISHER, P.A.**
Neal J. Deckant (State Bar No. 322946)
Ines Diaz Villafana (State Bar No. 354099)
Joshua B. Glatt (State Bar No. 354064)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
Email: ndeckant@bursor.com
idiaz@bursor.com
jglatt@bursor.com

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

JONATHAN KROSKEY, individually and on behalf of all others similarly situated,

Plaintiff,

v.

ELEVATE LABS, LLC and MINDSNACKS, INC.,

Defendants.

Case No. 5:24-cv-08113-EJD

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION**

Date: April 17, 2025
Time: 9:00 a.m.
Courtroom: Courtroom 4
Judge: Hon. Edward J. Davila

## TABLE OF CONTENTS

PAGE(S)


INTRODUCTION .......... 1

LEGAL STANDARD .......... 2

ARGUMENT .......... 2

I. PLAINTIFF WAS NOT ON NOTICE OF THE ELEVATE TERMS .......... 2

A. The Ninth Circuit's Binding Decision In *Berman* Should Dictate The Outcome Here .......... 3

B. The Hyperlink To The Elevate Terms Was Too Inconspicuous To Put Plaintiff On Notice .......... 5

1. The Hyperlink Is Not Discernable .......... 6

2. The Hyperlink Is The Least Prominent Element On The Page And Is A Considerable Distance From The Other Buttons .......... 7

C. Regardless Of The Forward-Looking Nature Of The Relationship, Defendants Fail To Show Plaintiff Was On Notice .......... 9

II. DEFENDANTS HAVE NOT MET THEIR BURDEN TO SHOW PLAINTIFF'S CLAIMS ARE ENCOMPASSED BY THE ARBITRATION CLAUSE .......... 10

A. Arbitrability Should Be Decided By The Court .......... 11

1. Arbitrability As To Defendant Mindsnacks Should Be Decided By The Court .......... 11

2. Arbitrability As To Defendant Elevate Should Be Decided By The Court .......... 13

B. Plaintiff's Claims Exist Independently Of—And Therefore Do Not Relate To—The Elevate Terms .......... 15

III. DEFENDANT MINDSNACKS CANNOT ENFORCE THE ELEVATE TERMS .......... 16

CONCLUSION .......... 18

## TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Berman v. Freedom Fin. Network, LLC*,
30 F.4th 849 (9th Cir. 2022) ........ passim

*Brennan v. Opus Bank*,
796 F.3d 1125 (9th Cir. 2015) ........ 13

*Burzdak v. Universal Screen Arts, Inc.*,
2021 WL 3621830 (N.D. Cal. Aug. 16, 2021) ........ 8

*Calzadillas v. Wonderful Co., LLC*,
2019 WL 2339783 (E.D. Cal. June 3, 2019) ........ 14

*Chiron Corp. v. Ortho Diagnostic Sys.*,
207 F.3d 1126 (9th Cir. 2000) ........ 2

*Colgate v. JUUL Labs, Inc.*,
402 F. Supp. 3d 728 (N.D. Cal. 2019) ........ 3, 7

*Cooper v. Ruane Cunniff & Goldfarb Inc.*,
990 F.3d 173 (2d Cir. 2021) ........ 15

*Cullinane v. Uber Tech., Inc.*,
893 F.3d 53 (1st Cir. 2018) ........ 8

*Dean v. OKCoin USA Inc.*,
2024 WL 3522207 (N.D Cal. July 23, 2024) ........ 10

*Doe v. Princess Cruise Lines, Ltd.*,
657 F.3d 1204 (11th Cir. 2011) ........ 15, 16

*Eiess v. USAA Fed. Sav. Bank*,
404 F. Supp. 3d 1240 (N.D. Cal. 2019) ........ 13

*Ellington v. Eclipse Recreational Vehicles*,
2022 WL 72351 (9th Cir. Jan. 7, 2022) ........ 18

*Engalla v. Permanente Med. Grp., Inc.*,
15 Cal. 4th 951 (1997) ........ 10

*Faire Wholesale, Inc. v. Tundra, Inc.*,
2023 WL 8586681 (N.D. Cal. Dec. 8, 2023) ........ 12

*Faucett v. Move, Inc.*,
2024 WL 2106727 (C.D. Cal. Apr. 22, 2024) ........ 2, 17, 18

*First Options of Chicago Inc. v. Kaplan*,
514 U.S. 938 (1995) ........................................................ 14

*Ghazizadeh v. Coursera, Inc.*,
737 F. Supp. 3d 911 (N.D. Cal. 2024)........................................................ 10

*Goldstein v. Fandango Media, LLC*,
2021 WL 6617447 (S.D. Fla. July 27, 2021) ........................................................ 8

*Guisinger v. Keystone RV Co.*,
2024 WL 3384211 (9th Cir. July 12, 2024) ........................................................ 17

*Howard v. Goldbloom*,
30 Cal. App. 5th 659 (2018)........................................................ 16

*Ingalls v. Spotify USA, Inc.*,
2016 WL 6679561 (N.D. Cal. Nov. 14, 2016)........................................................ 14

*Jackson v. Amazon.com, Inc.*,
65 F.4th 1093 (9th Cir. 2023)........................................................ 1, 3, 15, 16

*Jackson v. Amazon.com, Inc.,*
*v. Amazon.com, Inc.*, 65 F.4th 1093 (9th Cir. 2023) ........................................................ 18

*Jones v. Halliburton Co.*,
583 F.3d 228 (5th Cir. 2009)........................................................ 15

*Keebaugh v. Warner Bros. Ent. Inc.*,
100 F. 4th 1005 (9th Cir. 2024)........................................................ 9

*Kramer v. Toyota Motor Corp.*,
705 F.3d 1122 (9th Cir. 2013)........................................................ 12

*Lewis v. Kelly Servs. Glob. LLC*,
2024 WL 5220080 (C.D. Cal. Nov. 7, 2024) ........................................................ 14

*Maree v. Deutsche Lufthansa AG*,
2021 WL 267853 (C.D. Cal. Jan. 26, 2021)........................................................ 7

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
473 U.S. 614 (1985) ........................................................ 2

*Morrison v. Yippee Ent., Inc.*,
2024 WL 4647296 (S.D. Cal. Oct. 31, 2024)........................................................ 7, 9

*Murphy v. DirecTV, Inc.*,
724 F.3d 1218 (9th Cir. 2013)........................................................ 16

*Nicosia v. Amazon.com, Inc.*,
834 F.3d 220 (2d Cir. 2016) ........................................................ 8

*Patrick v. Running Warehouse, LLC*,
93 F.4th 468 (9th Cir. 2024) ..... 13

*Patterson v. Jump Trading LLC*,
710 F. Supp. 3d 692 (N.D. Cal. 2024) ..... 11, 12

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,
388 U.S. 395 (1967) ..... 11

*Rajagopalan v. NoteWorld, LLC*,
718 F.3d 844 (9th Cir. 2013) ..... 1

*Ramirez v. Trusper, Inc.*,
2024 WL 4479862 (N.D. Cal. Oct. 11, 2024) ..... 9

*Rice v. Downs*,
248 Cal. App. 4th 175 (2016) ..... 10

*Rocha v. Urban Outfitters, Inc.*,
2024 WL 393486 (N.D. Cal. Feb. 1, 2024) ..... 8

*Ruiz v. Kelly Serv. Glob. LLC*,
2024 WL 3618222 (E.D. Cal. Aug. 1, 2024) ..... 13

*Sadlock v. Walt Disney Co.*,
2023 WL 4869245 (N.D. Cal. July 31, 2023) ..... 7, 8

*Safley v. BMW of N. Am., LLC*,
2021 WL 409722 (S.D. Cal. Feb. 5, 2021) ..... 12

*Sandquist v. Lebo Automotive, Inc.*,
1 Cal. 5th 233 (2016) ..... 11, 16

*SEIU Local 121RN v. Los Robles Regional Med. Ctr.*,
976 F.3d 849 (9th Cir. 2020) ..... 11

*Silva v. WhaleCo, Inc.*,
2024 WL 4487421 (N.D. Cal. Oct. 10, 2024) ..... 10

*Smith v. Google, LLC*,
722 F. Supp. 3d 990 (N.D. Cal. 2024) ..... 17, 18

*Soltero v. Precise Distribution, Inc.*,
102 Cal. App. 5th 887 (2024) ..... 2, 16, 17

*Stafford v. Rite Aid Corp.*,
998 F.3d 862 (9th Cir. 2021) ..... 17

*Strehl v. Guitar Ctr., Inc.*,
2023 WL 9700041 (C.D. Cal. Nov. 3, 2023) ..... 7

*United States ex rel. Welch v. My Left Foot Children's Therapy, LLC*,
871 F.3d 791 (9th Cir. 2017) .................................................................................... 15, 16

*Vasquez v. SaniSure, Inc.*,
101 Cal. App. 5th 139 (2024) ........................................................................................ 1, 2

*Wilson v. Redbox Automated Retail, LLC*,
448 F. Supp. 3d 873 (N.D. Ill. 2020) .................................................................................. 7

*Young v. ByteDance Inc.*,
700 F. Supp. 3d 808 (N.D. Cal. 2023) ....................................................................... 12, 13

Plaintiff Jonathan Kroskey ("Plaintiff") respectfully submits this opposition to Defendants Elevate Labs, LLC ("Elevate") and MindSnacks, Inc.'s ("MindSnacks") (together, "Defendants") Motion to Compel Arbitration (ECF No. 14) (the "Motion" or "MTC").

**INTRODUCTION**

Defendants, like all technology companies, should value consumer privacy. However, Defendants only seem to care about their own. Rather than face Plaintiff's well-founded VPPA and CIPA claims in open court, Defendants rather seek to push Plaintiff's claims into the secrecy of private arbitration. But Defendants' Motion faces an uphill battle. The hyperlink Defendants contend put Plaintiff on notice of an agreement to arbitrate is in barely-legible gray font at the very bottom of the page *prior* to the account creation page and far from the other textual elements on the page, which are significantly larger and in bright colors. Even putting this issue aside, Plaintiff's claims are independent of the Terms of Service Defendants seek to enforce (Declaration of Kirsty Walls, Ex. B (the "Walls Decl.") (referred to herein as the "Elevate Terms")) and are therefore not encompassed by the arbitration clause. What is more, Defendant MindSnacks, Inc. is not even a signatory to the Elevate Terms it seeks to enforce. MindSnacks thus has no authority – under the doctrine of equitable estoppel or otherwise – to enforce the Elevate Terms. Further, MindSnacks fails to overcome the presumption under California law that the doctrine of equitable estoppel does not apply.

Any of the aforementioned issues on their own would be enough to doom Defendants' Motion. Defendants must overcome all three, and they bear the burden of proof for each. *See Vasquez v. SaniSure, Inc.*, 101 Cal. App. 5th 139, 143 (2024). All the while, Defendants must face precedent from the Ninth Circuit and California appellate courts, as well as myriad cases in this District and others, that undermine each of their positions. *See, e.g.*, *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856-57 (9th Cir. 2022) (finding no notice of hyperlink to terms containing arbitration clause); *Jackson v. Amazon.com, Inc.*, 65 F.4th 1093, 1101-04 (9th Cir. 2023) (finding privacy claim fell outside of scope of arbitration clause); *Rajagopalan v. NoteWorld, LLC*, 718 F.3d 844, 846-48 (9th Cir. 2013) (declining to allow non-party to enforce

arbitration agreement under the doctrine of equitable estoppel). Defendants simply cannot jump through that many hoops. For the following reasons, Defendants' Motion should be denied.

## LEGAL STANDARD

The "first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate the dispute." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985). The court must determine: (1) whether there exists a valid agreement to arbitrate; and (2) if there is a valid agreement, whether the dispute falls within its terms. *Chiron Corp. v. Ortho Diagnostic Sys.*, 207 F.3d 1126, 1130 (9th Cir. 2000). "In determining whether the parties have agreed to arbitrate a particular dispute, federal courts apply state-law principles of contract formation." *Berman*, 30 F.4th at 855. "The party seeking to compel arbitration bears the burden of proving by a preponderance of the evidence that an agreement to arbitrate a dispute exists." *Vazquez*, 101 Cal. App. 5th at 143 (cleaned up).

"Although there is a strong public policy in favor of contractual arbitration, there is no policy compelling anyone to accept arbitration of controversies which they have not agreed to arbitrate. Because arbitration is a matter of contract, the basic rule is that one must be a party to an arbitration agreement to be bound by it or invoke it—with limited exceptions." *Soltero v. Precise Distribution, Inc.*, 102 Cal. App. 5th 887, 892 (2024). Those exceptions are to be "narrowly construed." *Faucett v. Move, Inc.*, 2024 WL 2106727, *5 (C.D. Cal. Apr. 22, 2024).

## ARGUMENT

### I. PLAINTIFF WAS NOT ON NOTICE OF THE ELEVATE TERMS

Defendants argue that "Plaintiff's assent to the Arbitration Agreement occurred when he continued to create his account after being presented with a with a conspicuous, bolded disclosure on the Balance App's sign-up page." MTC at 8.[1] That is wrong, as Plaintiff was not put on notice of the Elevate Terms.

"To form a contract under … California law, the parties must manifest their mutual assent to the terms of the agreement." *Berman*, 30 F.4th at 855. "Website users are entitled to assume

---

[1] Defendants do not and cannot argue that Plaintiff had actual notice of the arbitration agreement.

that important provisions—such as those that disclose the existence of proposed contractual terms—will be prominently displayed, not buried in fine print." *Id.* at 857. Thus, "[t]o avoid the unfairness of enforcing contractual terms that consumers never intended to accept, courts confronted with online agreements such as those at issue here have devised rules to determine whether meaningful assent has been given." *Id.* at 856. "Unless the website operator can show that a consumer has actual knowledge of the agreement, an enforceable contract will be found based on an inquiry notice theory only if: (1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; *and* (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms." *Id.* (emphasis added). Accordingly, when a hyperlink to an agreement is "not conspicuous enough to put [Plaintiff] on inquiry notice," then the agreement is not binding. *Colgate v. JUUL Labs, Inc.*, 402 F. Supp. 3d 728, 764 (N.D. Cal. 2019).

"[T]he onus must be on website owners to put users on notice of the terms to which they wish to bind consumers" as "consumers cannot be expected to ferret out hyperlinks to terms and conditions to which they have no reason to suspect they will be bound." *Jackson*, 65 F.4th at 1100. Thus, the burden is on the party "seeking arbitration to show that it provided notice … and that there was mutual assent to the contractual agreement to arbitrate." *Id.* at 1099. Defendants cannot meet their burden to show Plaintiff was on notice of the Elevate Terms.

### A. The Ninth Circuit's Binding Decision In *Berman* Should Dictate The Outcome Here

In the Ninth Circuit's binding decision in *Berman*, the appellate court evaluated the exact question before the Court here: "[u]nder what circumstances can the use of a website bind a consumer to a set of hyperlinked 'terms and conditions' that the consumer never saw or read?" 30 F.4th at 853. The webpages in *Berman* containing the hyperlinks at issue looked like this:




*Id*. at 859 (Appendix A).



*Id.* at 861 (Appendix B).

In *Berman*, similar to here, the defendants argued that "by clicking on the 'continue' buttons, [the Plaintiff] had agreed to the hyperlinked terms and conditions, including the mandatory arbitration provision." *Id.* at 854. The Ninth Circuit disagreed, holding "the design and content of the webpages [the plaintiffs] visited did not adequately call to their attention [] the existence of the terms and conditions…." *Id.* at 857. Specifically:

> The text disclosing the existence of the terms and conditions … ***is printed in a tiny gray font considerably smaller than the font used in the surrounding website elements***, and indeed in a font so small that it is barely legible to the naked eye. The comparatively larger font used in all of the surrounding text naturally directs the user's attention everywhere else. And the textual notice is further deemphasized by the overall design of the webpage, in which other visual elements draw the user's attention away from the barely readable critical text.

*Id.* at 856-57 (cleaned up) (emphasis added); *see also id.* at 857 ("Simply underscoring words or phrases, as in the webpages at issue here, will often be insufficient to alert a reasonably prudent user that a clickable link exists."). That description in *Berman* applies to Defendants' page here.

### B. The Hyperlink To The Elevate Terms Was Too Inconspicuous To Put Plaintiff On Notice

Here, the sign-up page on Defendants' app looks like this:




Walls Decl. Ex. A.

The Hyperlink to the Elevate Terms bears many of the same hallmarks of the hyperlinks found inconspicuous in *Berman*.

**1. <u>The Hyperlink Is Not Discernable</u>**

Similar to *Berman*, the hyperlink at issue here "is printed in a tiny gray font" and is not recognizable as a hyperlink. *Berman*, 30 F.4th at 856. The links are not underlined and appear in gray font that is just a shade different from the surrounding text and background. Because of the page's gray background and the text, the non-underlined "Terms and Conditions" "is barely legible to the naked eye." *Id*. As courts have repeatedly found, simply changing the color of text,

particularly to a different shade of gray, to designate a hyperlink is not itself sufficient for notice. *See, e.g.*, *Sadlock v. Walt Disney Co.*, 2023 WL 4869245, at *9-10 (N.D. Cal. July 31, 2023) ("The text used in the paragraph that refers to the Subscriber Agreement is not so much white but rather whitish/grayish in color, and thus does not stand out against the black background. Similarly, the text used for the term 'Subscriber Agreement' – although blue in color (which concededly indicates a hyperlink) – appears muted and thus does not stand out against the black background.)."

Here, given that text with more contrast is not per se sufficient to put a consumer on notice, then certainly Defendants' dark-gray on light-grey display is not either. *See, e.g.*, *Colgate*, 402 F. Supp. 3d at 765-66 ("I am not convinced that the mere change in color of the hyperlinks, without more, is enough."); *Wilson v. Redbox Automated Retail, LLC*, 448 F. Supp. 3d 873, 885 (N.D. Ill. 2020) ("Using a different color for the hyperlink from the surrounding text, by itself, is not sufficient to render the hyperlink reasonably conspicuous."); *Berman*, 30 F.4th at 857 ("Simply underscoring words or phrases, as in the webpages at issue here, will often be insufficient to alert a reasonably prudent user that a clickable link exists."); *Strehl v. Guitar Ctr., Inc.*, 2023 WL 9700041, at *7 (C.D. Cal. Nov. 3, 2023) ("[T]he color of the hyperlink cannot offset and compensate for the size of the hyperlink or the distance between the statement containing the hyperlink and the second button."); *Maree v. Deutsche Lufthansa AG*, 2021 WL 267853, at *4 (C.D. Cal. Jan. 26, 2021) (finding hyperlink was inconspicuous where, although a different color, the hyperlink was "not highlighted, underlined, in all capital letters, or displayed inside of a conspicuous and clickable box"); *Morrison v. Yippee Ent., Inc.*, 2024 WL 4647296, at *4 (S.D. Cal. Oct. 31, 2024) ("While the 'Terms of Service' hyperlink appears in blue font against a white background—a characteristic to which many courts look—the font is not underlined nor completely capitalized and is small in proportion to most of the text on the page.").

#### 2. **The Hyperlink Is The Least Prominent Element On The Page And Is A Considerable Distance From The Other Buttons**

Further, the barely legible gray text at the bottom of the screen is in stark contrast to buttons in the middle of the screen, which "distract from the reference to the [Elevate Terms]" and which "are all in larger size font and employ design elements such as bolding [and bright colors] to catch

the eye." *Sadlock*, 2023 WL 4869245 at *10. The buttons "draw the user's attention away from the barely readable critical text." *Berman*, 30 F.4th at 857; *see also*, *e.g.*, *id.* ("The comparatively larger font used in all of the surrounding text naturally directs the user's attention everywhere else."); *Rocha v. Urban Outfitters, Inc.*, 2024 WL 393486, at *5 (N.D. Cal. Feb. 1, 2024) ("[T]he Court agrees with Rocha that the page where Urban Outfitters includes the disclosure … contains other information that is more likely to draw a consumer's attention."); *Burzdak v. Universal Screen Arts, Inc.*, 2021 WL 3621830, at *6 (N.D. Cal. Aug. 16, 2021) ("[V]isual prominence – through bolding, a different color, and/or capitalization – is given to other text, including 'Free Shipping,' and thus attention is diverted away from the Terms of Use."); *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 237 (2d Cir. 2016) (hyperlink not conspicuous where on a page where "various text is displayed in at least four font sizes and six colors … alongside multiple buttons and promotional advertisements" and "the presence of customers' personal address, credit card information, shipping options, and purchase summary are sufficiently distracting so as to temper whatever effect the notification has"); *Cullinane v. Uber Tech., Inc.*, 893 F.3d 53, 63 (1st Cir. 2018) ("The inclusion of the additional payment option and the placement of a large blue PayPal button in the middle of the screen were more attention-grabbing and displaced the hyperlink to the bottom of the screen.").

In addition, the gray font is far below the buttons, which the user would likely click without looking at anything else. *See Sadlock*, 2023 WL 4869245 at *10 (finding a lack of sufficient notice when the hyperlink in question was located five lines away from the "Agree and Subscribe" button). Indeed, "[i]t is significant that [Defendants'] notice regarding the binding nature of its Terms and Policies was placed *beneath* the large … click button, rather than above it." *Goldstein v. Fandango Media, LLC*, 2021 WL 6617447, at *3 (S.D. Fla. July 27, 2021) (emphasis in original). "It is not reasonable to expect a user to continue reading below the highly conspicuous purchase button." *Id*. In this way, the hyperlink at issue was actually ***more inconspicuous*** than in *Berman*, where the relevant hyperlinks appear ***above*** the button the users were required to click on. *Berman*, 30 F.4th at 856-60.

Each of these factors, by themselves, defeat Defendants' argument that Plaintiff was on notice of its terms of service and privacy policy. Given this weight of authority, Defendants' position is simply not tenable.

### C. Regardless Of The Forward-Looking Nature Of The Relationship, Defendants Fail To Show Plaintiff Was On Notice

None of Defendants' arguments compel a different result. Defendants appear to argue that Plaintiff is bound by the Elevate Terms because "[w]hen a consumer signs up for an ongoing account, such as through an app, 'it is reasonable to expect that the typical consumer in that type of transaction contemplates entering into a continuing, forward-looking relationship' governed by terms and conditions." MTC at 7-8. This argument ignores Defendants' threshold notice deficiencies because "even in the context of a forward-looking and continuing relationship, [Defendants] still had the obligation to ensure that the visual placement of the notice of the [] terms was conspicuous." *Ramirez v. Trusper, Inc.,* 2024 WL 4479862, at *4 (N.D. Cal. Oct. 11, 2024) (Davila, J.); *see also Keebaugh v. Warner Bros. Ent. Inc.*, 100 F. 4th 1005, 1019 (9th Cir. 2024) ("The context of the transaction is a non-dispositive factor under California law, used to evaluate whether a website's notice is sufficiently conspicuous. Courts must still evaluate the visual aspects of the notice ...."); *Morrison*, 2024 WL 4647296 at *4 ("Likewise, one would expect to have, and exercise, ongoing access to Defendant's content via its app or webpage throughout the subscription period … [h]owever, the Court must still analyze the hyperlink's visual placement to determine whether it is sufficiently conspicuous to put a 'reasonably prudent' user on notice. Ultimately, the Court concludes that Defendant did not provide Plaintiff with sufficient notice.") (internal citations omitted).

Further, all of the cases cited by Defendants to show that the sign-up screen purportedly gave sufficient notice involved hyperlinks that were significantly more conspicuous than Defendants' sign-up screen—which hid the hyperlink to the Elevate Terms at the bottom of the screen in tiny gray font against a gray background with no underlining or contrasting colors for the hyperlink—here. For example, in *Silva v. WhaleCo, Inc.*, the court explained that "Temu users are presented with hyperlinks to 'Terms of Use and Privacy Policy' which are displayed ***directly below***

the 'continue' button. The language of 'Terms of Use and Privacy Policy' is ***large enough to read***, and it is ***capitalized and underlined in blue***, which stands out from the surrounding text. This denotes the existence of a hyperlink to a reasonably prudent internet user. And like the notice at issue in *Oberstein*, Temu users encounter the 'Terms of Use and Privacy Policy' more than once during the registration process." 2024 WL 4487421, at *4 (N.D. Cal. Oct. 10, 2024) (internal citations omitted) (emphasis added). *See also Dean v. OKCoin USA Inc.* 2024 WL 3522207, at *1 (N.D Cal. July 23, 2024) (finding sufficient notice of a ***black bolded hyperlink*** located ***directly above*** the "sign up" button that created consent); 2024 WL 3522207, at *1 (N.D Cal. July 23, 2024).

Defendants' remaining citations are distinguishable in that they involved ***conspicuous*** links, which Defendants' sign-up page lacks here. *See, e.g.*, *Ghazizadeh v. Coursera, Inc.*, 737 F. Supp. 3d 911, 928-929 (N.D. Cal. 2024) ("[T]he darker and bolded text of the hyperlinked 'Terms of Service' ***adequately contrasts with the light gray background*** such that a user would not 'be required to hover their mouse over otherwise plain-looking text or aimlessly click on words on a page in an effort to ferret out hyperlinks.' The bolded text 'denot[es] the existence of a hyperlink.' The location of the link ***directly below*** the 'Sign Up' button also draws attention to the notice.") (emphasis added) (internal citations omitted).

## II. DEFENDANTS HAVE NOT MET THEIR BURDEN TO SHOW PLAINTIFF'S CLAIMS ARE ENCOMPASSED BY THE ARBITRATION CLAUSE

Even assuming Defendants have met their burden to show Plaintiff was on notice of, and assented to, the Elevate Terms (they have not not), Defendants *still* have to show Plaintiff's claims fall within the scope of the arbitration clause. Defendants do not meet this standard.

"California law incorporates many of the basic policy objectives contained in the Federal Arbitration Act, including a presumption in favor of arbitrability and a requirement that an arbitration agreement must be enforced on the basis of state law standards that apply to contracts in general." *Engalla v. Permanente Med. Grp., Inc.*, 15 Cal. 4th 951, 971-72 (1997) (cleaned up). However, "there is no policy compelling persons to accept arbitration of controversies which they have not agreed to arbitrate." *Rice v. Downs*, 248 Cal. App. 4th 175, 185 (2016). Indeed, the

California Supreme Court has mandated that where, as here, "the drafter of a form contract has prepared an arbitration provision whose application to a particular dispute is uncertain, ordinary contract principles require that the provision be construed *against the drafter's interpretation and in favor of the nondrafter's interpretation.*" *Sandquist v. Lebo Automotive, Inc.*, 1 Cal. 5th 233, 248 (2016) (emphases added). These principles are consistent with the "equal footing" rule, which requires arbitration agreements to be "as enforceable as any other contract, *but not more so*." *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 n.12 (1967) (emphasis added).

Based on these principles, Defendants cannot show Plaintiff's claims are encompassed by the arbitration clause.

### A. Arbitrability Should Be Decided By The Court

Defendants argue "Plaintiff agreed to delegate any dispute relating to scope or arbitrability to the JAMS-appointed arbitrator when he assented to the Arbitration Agreement." MTC at 9-10. This is wrong. Even if Plaintiff had adequate notice of the Elevate Terms (he did not), the Court should determine arbitrability for both Defendants.

#### 1. Arbitrability As To Defendant Mindsnacks Should Be Decided By The Court

As an initial matter, it is for the Court to decide whether Plaintiff's claims against Defendant MindSnack, a third party to the Elevate Terms, fall within the scope of the arbitration clause.[2] As the Ninth Circuit has instructed, "courts should not assume that the parties agreed to arbitrate arbitrability unless there is *clear and unmistakable* evidence that they did so." *SEIU Local 121RN v. Los Robles Regional Med. Ctr.*, 976 F. 3d 849, 853 (9th Cir. 2020) (cleaned up) (emphasis in original) (internal citation omitted). In fact, the presumption is that silence or ambiguity must be construed against delegation. *id*.

Here, there is no "clear and unmistakable evidence" that Plaintiff and Elevate agreed to delegate issues of arbitrability to the arbitrator with regards to claims against third-party Mindsnacks. *See, e.g.*, *Patterson v. Jump Trading LLC*, 710 F. Supp. 3d 692, 708 (N.D. Cal. 2024)

---

[2] Defendants admit MindSnacks is not a party to the Elevate Terms. MTC at 11 ("[T]he terms do not explicitly reference MindSnacks ….").

("[T]he Court is reluctant to conclude that the parties intended to arbitrate all questions of arbitrability arising in any dispute they might have with any third party anywhere else in the world, as Jump suggests."). On this point, *Kramer v. Toyota Motor Corp.* is determinative. There, the arbitration clause expressly delegated the question of arbitrability to an arbitrator. 705 F. 3d 1122, 1224 (9th Cir. 2013) ("If either you or we elect, any claims or disputes arising out of this transaction, or relating to it, will be determined by binding arbitration and not by court action."). However, "[p]laintiffs only agreed to arbitrate arbitrability—or any other dispute—with the Dealerships because the arbitration clause is limited to claims between 'you and us'—*i.e.* Plaintiffs and the Dealerships." *Id.* at 1128. By contrast, "the arbitration agreements do not contain clear and unmistakable evidence that Plaintiffs and Toyota [the nonsignatory] agreed to arbitrate arbitrability." *Id.* at 1127. Accordingly, the Ninth Circuit found it was for the court to decide whether the dispute between the plaintiffs and Toyota (the non-signatory) belonged in arbitration.

The same is true here. The arbitration clause is between "Balance" (defined as Elevate Labs, LLC) and the user. *See* Walls Decl. Ex. B, at ECF Page 2 ("Elevate Labs, LLC. ('Balance,' 'we,' 'us,' 'our'"). There is no delegation clause in the Terms and, therefore no language that would expand the scope of arbitrability to a third party like MindSnacks. *See generally id*. Under these circumstances, there is no "clear and unmistakable" intent by the parties to delegate the question of arbitrability to an arbitrator with regards to claims against third parties (*i.e.*, MindSnacks). *See also Patterson*, 710 F. Supp. 3d at 708 ("[T]he agreement between TFL and Mr. Tobias lacks clear and unmistakable evidence of the parties' intent to assign questions regarding the arbitrability of disputes with third parties to the arbitrator."); *Faire Wholesale, Inc. v. Tundra, Inc.*, 2023 WL 8586681, at *3 (N.D. Cal. Dec. 8, 2023) ("Nothing in the arbitration agreement remotely suggests Faire intended to arbitrate arbitrability with nonsignatories such as Tundra."); *Young v. ByteDance Inc.*, 700 F. Supp. 3d 808, 811 (N.D. Cal. 2023) ("[I]t makes no sense to interpret the delegation provision as reflecting an intent by Velez to allow an arbitrator to decide whether a dispute between her and TikTok is subject to arbitration."); *Safley v. BMW of N. Am., LLC*, 2021 WL 409722, at *4 (S.D. Cal. Feb. 5, 2021) ("[T]he Court must decide whether Defendant can enforce the arbitration agreement, including the contract's agreement to delegate

arbitrability issues to the arbitrator."). Indeed, even if "the delegation provision itself does not refer to disputes 'between the Company and me' does not suggest that the parties intended for the delegation provision to cover people who were not parties to the agreement." *Young*, 700 F. Supp. 3d at 811.

**2. Arbitrability As To Defendant Elevate Should Be Decided By The Court**

Because there is no express language in the Elevate Terms assigning questions of arbitrability to an arbitrator, Defendants rely on *Patrick v. Running Warehouse, LLC*, 93 F.4th 468, 481 (9th Cir. 2024) for the proposition that merely because the Elevate Terms select JAMS as the arbitrator, then arbitrability must be decided by the arbitrator. MTC at 9-10. Defendants misstate the ruling in *Patrick* and this Court should determine arbitrability for both Defendants.

In *Patrick*, the court adopted the ruling in *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) and found that the parties, if there was an agreement to a contract, could delegate arbitrability to an arbitrator by incorporating the JAMS rules into the agreement. *Patrick*, 93 F.4th at 481. However, the court noted that "Brennan involved an employment contract between two sophisticated parties." *Id.* The court declined to rule on "whether *Brennan*'s holding should extend to arbitration clauses in consumer contracts between a sophisticated entity and an average unsophisticated consumer." *Id.*

"The issue of whether the sophistication of the contracting parties should be taken into account in evaluating whether a delegation to an arbitrator is clear and unmistakable is an open one in the Ninth Circuit." *Eiess v. USAA Fed. Sav. Bank*, 404 F. Supp. 3d 1240, 1252 (N.D. Cal. 2019). Many courts have held that the court should determine the question of arbitrability when, as here, the nondrafting party is "unsophisticated." *See, e.g.*, *Ruiz v. Kelly Serv. Glob. LLC*, 2024 WL 3618222, at *5 (E.D. Cal. Aug. 1, 2024) ("Here, the court concludes that defendant has failed to show 'clear and unmistakable' evidence that 'the parties agreed to arbitrate arbitrability.' Plaintiff contends that he is an unsophisticated hourly worker of a temporary services employer … Defendant does not argue that plaintiff is sophisticated. Indeed, defendant does not address the issue of sophistication anywhere in its pending motion or its reply…") (internal citations omitted);

*Calzadillas v. Wonderful Co., LLC*, 2019 WL 2339783, at *5 (E.D. Cal. June 3, 2019) (finding that "seasonal agricultural workers" were unsophisticated where it was "unclear what level of education each has attained, but it is certainly a reasonable assumption that plaintiff and the putative class members are untrained in the practice of law"); *Lewis v. Kelly Servs. Glob. LLC*, 2024 WL 5220080, at *4 (C.D. Cal. Nov. 7, 2024) ("This Court finds more persuasive the line of cases holding that incorporation of the AAA rules does not amount to 'clear and unmistakable' delegation where at least one party is unsophisticated. The decisions in these cases are consistent with the general presumption *against* delegation of arbitrability to the arbitrator. Moreover, as one district court aptly explained: 'For an unsophisticated plaintiff to discover she had agreed to delegate gateway questions of arbitrability, she would need to locate the arbitration rules at issue, find and read the relevant rules governing delegation, and then understand the importance of a specific rule granting the arbitrator jurisdiction over questions of validity.' That is no easy feat. Indeed, the Supreme Court has recognized that 'the "who (primarily) should decide arbitrability" question' is 'rather arcane,' as '[a] party often might not focus upon that question or upon the significance of having arbitrators decide the scope of their own powers.' Applying these principles here, the Court concludes that Defendants have failed to show 'clear and unmistakable' evidence that the parties 'agreed to arbitrate arbitrability.' Defendants do not argue that Lewis is sophisticated, and the Court has no difficulty finding that Lewis is unsophisticated.") (internal citations omitted, cleaned up); *Ingalls v. Spotify USA, Inc.*, 2016 WL 6679561, at *4 (N.D. Cal. Nov. 14, 2016).

Here, Plaintiff is an ordinary consumer who downloaded a meditation video app. He is not a lawyer and has no extensive experience in contract law, the creation of contracts online, online technology, the arbitration process, or any other process that would cause him to "focus upon that question or upon the significance of having arbitrators decide the scope of their own powers." *Lewis*, 2024 WL 5220080, at *4 (quoting *First Options of Chicago Inc. v. Kaplan*, 514 U.S. 938, 945 (1995)). As such, the Court should determine arbitrability.

### B. Plaintiff's Claims Exist Independently Of—And Therefore Do Not Relate To—The Elevate Terms

The arbitration clause in the Elevate Terms encompasses "all disputes, claims, or controversies arising out of or relating to the Terms of Service or the Services." Walls Decl. Ex. B, at ECF Page 16. Based on this language, Defendants contend "that the scope of the Arbitration Agreement clearly encompasses Plaintiff's disputes." MTC at 10. Defendants are mistaken.

The Ninth Circuit's decision in *Jackson* is instructive (and binding). In *Jackson*, Amazon's arbitration clause encompassed "any dispute or claim arising out of or relating in any way to this Agreement, including participation in the program or performance of services." 65 F.4th at 1095 (cleaned up). Despite this purportedly broad language, the Ninth Circuit found that claims based on Amazon's surveillance of Facebook groups solely made up of Amazon Flex drivers were not arbitrable because "Amazon's alleged misconduct existed independently of the contract and therefore fell outside the scope of the arbitration provision." *Id.* at 1104. Specifically, the Ninth Circuit rejected a but-for causation argument for relation that "because Amazon would not have conducted its spying operations if Jackson had not been a Flex driver, the dispute must be arbitrable." *Id.* at 1103. Instead, the Ninth Circuit held that the claims "existed independently" because "even if Jackson had no contract with Amazon but had been permitted to join the groups for some other reason, he would be able to bring the same claims for invasion of privacy." *Id.* at 1103-04.

*Jackson* also follows a long line of holdings from the Second, Fifth, Ninth, and Eleventh Circuits that rejected application of a broad arbitration clause to claims, like here, that exist independent of any contract. *See, e.g.*, *Cooper v. Ruane Cunniff & Goldfarb Inc.*, 990 F.3d 173, 183-84 (2d Cir. 2021); *Jones v. Halliburton Co.*, 583 F.3d 228, 240 (5th Cir. 2009); *United States ex rel. Welch v. My Left Foot Children's Therapy, LLC*, 871 F.3d 791, 799 (9th Cir. 2017); *Doe v. Princess Cruise Lines, Ltd.*, 657 F.3d 1204, 1219-20 (11th Cir. 2011). As these circuits have explained, the claims in each of these cases were not arbitrable because "the defendant could have engaged in the same conduct even in the absence of any contractual … relationship with the plaintiff, and a third party could have brought the same claims [] based on virtually the same

alleged facts." *Welch*, 871 F.3d at 799 (cleaned up). Instead, claims must have "some direct relationship" or "direct connection" with even the broad language of a clause; "otherwise, the term would stretch to the horizon and beyond" or "be meaningless." *Doe*, 657 F.3d at 1218-19.

That is the case here. Plaintiff's VPPA and CIPA claims involve Defendants' sharing of his personally identifiable information with a third party. Compl. ¶ 4. They have no direct relationship to the Elevate Terms. Indeed, Plaintiff would still have a claim regardless of whether or not the Terms existed, as they do not govern Defendants' sharing of personal information with third parties.

Thus, Plaintiff's claims exist independently of, and are "not dependent on [and therefore, does not relate to] the terms of the contract." *Jackson*, 65 F.4th at 1102; *see also Howard v. Goldbloom*, 30 Cal. App. 5th 659, 670 (2018) (finding claim was not arbitrable because "Defendants' fiduciary duties to minority shareholders and alleged wrongs exist independently of any employment relationship between Howard and Kaggle"). Further, to the extent there is ambiguity in the Elevate Terms concerning whether Plaintiff's claim fall within the scope of the arbitration clause, "ordinary contract principles require that the provision be construed against the drafter's interpretation and in favor of the nondrafter's interpretation." *Sandquist*, 1 Cal. 5th at 248.

## III. DEFENDANT MINDSNACKS CANNOT ENFORCE THE ELEVATE TERMS

Defendants argue that, despite not being a party to the Elevate Terms, "MindSnacks would also be entitled to enforce the Arbitration Agreement under principles of equitable estoppel" because "[i]t is well established that affiliates or non-signatories can enforce an arbitration agreement against signatories where, as here, the Plaintiff's claims against Defendants are intertwined with the contract providing for arbitration." MTC at 11. This is wrong.

"[G]enerally only signatories to an arbitration agreement are obligated to submit to binding arbitration." *Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1229 (9th Cir. 2013). However, "if a plaintiff relies on the terms of an agreement to assert his or her claims against a nonsignatory defendant, the plaintiff may be equitably estopped from repudiating the arbitration clause of that very agreement." *Soltero*, 102 Cal. App. 5th at 893.

Courts narrowly construe the equitable estoppel doctrine. *Faucett*, 2024 WL 2106727, at *5. There are two circumstances where a court may estop a party to an arbitration agreement from bringing claims against a nonparty in court:

> (1) [W]hen a signatory must rely on the terms of the written agreement in asserting its claims against the nonsignatory or the claims are intimately founded in and intertwined with the underlying contract, and (2) when the signatory alleges substantially interdependent and concerted misconduct by the nonsignatory and another signatory and the allegations of interdependent misconduct are founded in or intimately connected with the obligations of the underlying agreement.

*Smith v. Google, LLC*, 722 F. Supp. 3d 990, 994 (N.D. Cal. 2024). Neither circumstance is present here.[3]

"The plaintiff's ***actual dependence on the underlying contract*** in making out the claim against the nonsignatory is always the sine qua non of an appropriate situation for applying equitable estoppel." *Soltero*, 102 Cal. App. 5th at 893 (cleaned up) (emphasis added). If a plaintiff's claims "merely reference an agreement with an arbitration clause, equitable estoppel will not warrant compelling arbitration." *Stafford v. Rite Aid Corp.*, 998 F.3d 862, 865-866 (9th Cir. 2021).

*Smith* is instructive. There, Google sought to bind the plaintiff to an arbitration agreement to which Google was not a party. *Smith*, 722 F. Supp. 3d at 993. In rejecting Google's argument, the court found that the plaintiffs asserted only statutory claims, "none of which relies directly on the terms of any written agreement." *Id.* at 994. The court also rejected Google's argument that it was entitled to equitable estoppel because "plaintiffs could not have used [the service at issue] without assenting to H&R Block's agreement and the arbitration provision it included[.]" *Id*. The court held that "it [was] not enough for an agreement to be one but-for causal link in a chain of events leading to the circumstances underlying a claim; the claim itself must stem from or be intertwined with the agreement." *Id.*; *see also Guisinger v. Keystone RV Co.*, 2024 WL 3384211, at

[3] Because Defendants do not argue that the second circumstance is present, they have waived the argument. Accordingly, Plaintiff does not address that argument here. But in any event, MindSnacks would not be able to enforce the Elevate Terms under equitable estoppel because the second circumstance is also inapplicable to the present situation.

*1 (9th Cir. July 12, 2024) (noting "[t]he California Courts of Appeal have long rejected but-for causation as the relevant standard for" equitable estoppel).

As in *Smith*, Plaintiff's claims do not rely directly on the Elevate Terms. *See* Argument II.B, *supra*. Further, Plaintiff does not allege any part of the Elevate Terms satisfies an element of his claims. At best, the Terms may be "one but-for causal link in a chain in a chain of events leading to the circumstances underlying a claim." *Smith*, 722 F. Supp. 3d at 994. That does not allow MindSnacks to invoke the equitable estoppel doctrine.

Moreover, Plaintiff's claims do not depend on the Terms. That is, Plaintiff asserts statutory claims that would not change in the absence of the Terms. As such, the claims are not dependent on, or otherwise intertwined, with the Terms. *See Ellington v. Eclipse Recreational Vehicles*, 2022 WL 72351, at *1 (9th Cir. Jan. 7, 2022) ("Even if Ellington had no purchase agreement with [the signatory to the agreement], his implied warranty claims against [the nonsignatory defendant] would remain unchanged. Accordingly, the district court correctly denied the motion to compel arbitration"); *Jackson*, 65 F.4th at 1102-03 ("[A]lthough membership in Jackson's proposed class would require participation in the Amazon Flex program, the controversy in this case is ultimately not about any characteristics or conduct of class members, but whether Amazon is indeed liable for wiretapping and invasion of privacy.").

Further, Plaintiff "does not seek to simultaneously enforce" the Terms against Mindsnacks "while attempting to avoid the arbitration provision." *Faucett*, 2024 WL 2106727, at *5. To the contrary, Plaintiff does not mention the Terms in his Complaint and argues herein that he did not assent to them because he was not on notice of their existence. *See* Argument § I, *supra*.

**CONCLUSION**

For the foregoing reasons, Defendants' Motion should be denied.

Dated: February 6, 2025

**BURSOR & FISHER, P.A.**

By: */s/ Neal J. Deckant*
Neal J. Deckant

Neal J. Deckant (State Bar No. 322946)
Ines Diaz Villafana (State Bar No. 354099)
Joshua B. Glatt (State Bar No. 354064)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
Email: ndeckant@bursor.com
idiaz@bursor.com
jglatt@bursor.com

*Attorneys for Plaintiff*