Ian M. Ross (admitted *pro hac vice*)
iross@sidley.com
**SIDLEY AUSTIN LLP**
1001 Brickell Bay Drive, Suite 900
Miami, FL 33131
Telephone: (305) 391-5218
Facsimile: (305) 391-5101

Sarah E. Gallo (SBN 335544)
sgallo@sidley.com
**SIDLEY AUSTIN LLP**
555 California Street, Suite 2000
San Francisco, CA 94104
Telephone: (415) 772-7490
Facsimile: (415) 772-7400

*Attorneys for Defendants*
*Elevate Labs, LLC and MindSnacks, Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

JONATHAN KROSKEY, individually and on behalf of all others similarly situated,

Plaintiff,

vs.

ELEVATE LABS, LLC and MINDSNACKS, INC.,

Defendants.

Case No. 5:24-cv-08113-EJD

Assigned to: Hon. Edward J. Davila

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION**

Date: April 17, 2025
Time: 9:00 am
Place: Courtroom 4, 5th Floor

CLASS ACTION

# TABLE OF CONTENTS


INTRODUCTION ........................................ 1

ARGUMENT ........................................ 3

I. The Motion Demonstrated that Plaintiff Had Reasonably Conspicuous Notice of the Terms and Agreed to the Terms. ........................................ 3

II. Questions of Arbitrability or Enforceability Must Be Decided by an Arbitrator. .................... 7

A. Plaintiff's Argument that Elevate Cannot Enforce the Terms of the Agreement Also Fails. ........................................ 7

B. The Arbitration Agreement Applies to MindSnacks as an Affiliate of Elevate. .......... 9

III. Plaintiff's Claims Plainly Fall Within the Scope of the Arbitration Agreement. .................. 11

IV. MindSnacks Can Enforce the Terms and Arbitration Agreement. ........................................ 13

CONCLUSION ........................................ 15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Berman v. Freedom Fin. Network, LLC*,
30 F.4th 849 (9th Cir. 2022) ....................3, 6

*Brennan v. Opus Bank*,
796 F.3d 1125 (9th Cir. 2015) ....................7, 8, 9

*Calzadillas v. Wonderful Co.*,
No. 1:19-cv-00172-DAD-JLT, 2019 WL 2339783 (E.D. Cal. June 3, 2019) ....................9

*Cordas v. Uber Techs., Inc.*,
228 F. Supp. 3d 985 (N.D. Cal. Jan. 5, 2017)....................8

*Dean v. OKCoin USA Inc.*,
2024 WL 3522207 (N.D. Cal. July 23, 2024)....................6

*Fujian Pacific Elec. Co. Ltd. v. Bechtel Power Corp.*,
2004 WL 2645974 (N.D. Cal. Nov. 19, 2004) ....................14

*Ghazizadeh v. Coursera.*,
737 F. Supp. 3d 911 (N.D. Cal. June 20, 2024)....................1, 3, 6

*Jackson v. Amazon.com, Inc.*,
65 F.4th 1093 (9th Cir. 2023) ....................12, 13

*Keebaugh v. Warner Bros. Ent. Inc.*,
100 F.4th 1005 (9th Cir. 2024) ....................4

*Kramer v. Toyota Motor Corp.*,
705 F.3d 1122 (9th Cir. 2013) ....................11

*Larson v. Living Vehicle, Inc.*,
No. 24-cv-00598-DSF-MAA, 2024 WL 3298294 (C.D. Cal. May 14, 2024)....................15

*Lee v. DoNotPay, Inc.*,
683 F. Supp. 3d 1062 (C.D. Cal. July 20, 2023)....................4, 5

*Letizia v. Prudential Bache Sec., Inc.*,
802 F.2d 1185 (9th Cir. 1986) ....................14

*Lewis v. Kelly Servs. Glob., LLC*,
Case No. 2:24-cv-06781-JLS-AGR, 2024 WL 5220080 (C.D. Cal. Nov. 7, 2024) ....................9

*Marselian v. Wells Fargo & Co.*,
514 F. Supp. 3d 1166 (N.D. Cal. Jan. 20, 2021)....................14

*Maybaum v. Target Corp.*,
No. 2:22-CV-00687-MCS-JEM, 2022 WL 1321246 (C.D. Cal. May 3, 2022) ........................8

*Meyer v. Uber Techs., Inc.*,
868 F.3d 66 (2d Cir. 2017)........................................................................................5

*Misenheimer v. Rolls-Royce Motor Cars NA, LLC, No. CV 20-2288-RSWL-SKx*,
2020 WL 5372357 (C.D. Cal. July 20, 2020)...........................................................11

*Moyer v. Chegg, Inc.*,
2023 WL 4771181 (N.D. Cal. July 25, 2023)............................................................3

*Oberstein v. Live Nation Ent., Inc.*,
60 F.4th 505 (9th Cir. 2023) ..................................................................................3, 6

*Patrick v. Running Warehouse, LLC*,
93 F.4th 468 (9th Cir. 2024) ...............................................................................7, 8, 9

*Patterson v. Jump Trading LLC*,
710 F. Supp. 3d 692 (N.D. Cal. Jan. 4, 2024)...........................................................10

*Peter v. Doordash, Inc.*,
445 F. Supp. 3d 580 (N.D. Cal. Apr. 23, 2020)......................................................5, 6

*Pizarro v. QuinStreet, Inc., No. 22-cv-02803-MMC*,
2022 WL 3357838 (N.D. Cal. Aug. 15, 2022) ..........................................................5

*Ramirez v. Cnty. of San Bernardino*,
806 F.3d 1002 (9th Cir. 2015) ...................................................................................9

*Romero v. HP, Inc.*,
No. 16-CV-05415-LHK, 2017 WL 386237 (N.D. Cal. Jan. 27, 2017) ......................9

*Ruiz v. Kelly Serv. Glob. LLC*,
2024 WL 3618222 (E.D. Cal. Aug. 1, 2024)..............................................................8

*Silva v. WhaleCo, Inc.*,
2024 WL 4487421 (N.D. Cal. Oct. 10, 2024)..............................................................6

*Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*,
802 F. Supp. 2d 1125 (C.D. Cal. Aug. 9, 2011) .......................................................14

*Synopsys, Inc. v. Mentor Graphics Corp.*,
No. 12-6467 C MMC, 2013 WL 6577143 (N.D. Cal. Dec. 13, 2013) ......................15

*Translarity, Inc. v. Grand Junction Semiconductor PTE. Ltd.*,
No. 24-cv-02423-SI, 2024 WL 4634059 (N.D. Cal. Oct. 29, 2024) ........................15

*Wolf v. ClubCorp USA, Inc.*,
Case No. 22-cv-1688-MMA, 2023 WL 4306693 (S.D. Cal. June 20, 2023) ..........................15

**Other Authorities**

Fed. R. Civ. P. 15 ..... 9

**INTRODUCTION**

Plaintiff's Opposition to Defendants Elevate Labs, LLC ("Elevate") and MindSnacks, Inc. ("MindSnacks") (together, "Defendants" or "Balance")'s Motion to Compel Arbitration (the "Motion") fails to convincingly counter the fact that Plaintiff agreed to arbitrate his dispute. The Motion demonstrates that Plaintiff was presented with and agreed to Defendants' Terms of Service ("Terms") and Privacy Policy ("Privacy Policy") when he began to use Defendants' jointly-operated mobile application (the "Balance App"). Plaintiff notably does not dispute (1) that he signed up for and used the Balance App, (2) that the Terms contain a binding arbitration provision, or (3) that, under the Terms, any questions of arbitrability be determined by a JAMS-appointed arbitrator. Instead, Plaintiff offers a series of faulty arguments that try to sidestep his agreement to arbitrate.

First, Plaintiff argues that Defendants' sign-up screen on the Balance App did not technically put him on notice of Balance's Terms (he never says he did not see or read the Terms, notably). But this asks this Court to take an entirely different view on the application of *Berman v. Freedom Financial Network* than it did recently in *Ghazizadeh v. Coursera*. Plaintiff scrupulously dissects the sign-up screen to no avail: this Court has made clear it "consider[s] the full context of a hyperlink as presented." 737 F. Supp. 3d 911, 929 (N.D. Cal. June 20, 2024) (Davila, J.). Defendant's hyperlinks to the Terms and Privacy Policy were, like in *Coursera*, bolded in a contrasting color from the background on an uncluttered screen with no additional text. Plaintiff saw that disclosure at the same time that he sought to begin using the Balance App—courts have repeatedly held that consumers can logically expect to be presented with terms like those disclosed here at this time. Plaintiff cannot dodge his agreement to arbitrate on the basis that he was not on notice of the Terms.

Second, Plaintiff tries to avoid the clear delegation language and invocation of the JAMS rules in the Arbitration Agreement"[1] by arguing that he is "not a lawyer," so he did not know to read the JAMS rules. But Plaintiff's request that the Court consider his purported lack of sophistication is not supported by any pleading or attestation and should be rejected on that basis alone. Moreover, it strains credulity to think a court would find an arbitration agreement unenforceable on the sole grounds that

[1] The "Arbitration Agreement" refers to the comprehensive arbitration provision in Defendants' Terms. *See* ECF No. 14-3 at 16.

an individual is not an attorney, particularly when the Plaintiff otherwise agreed to a clearly-disclosed and carefully-explained Arbitration Agreement.

Third, Plaintiff strains to argue that, although he treated Defendants interchangeably throughout his Complaint, the Court should now separate them to find that one or the other cannot enforce the terms of the Arbitration Agreement. This disingenuous argument asks the Court to ignore the fact that Plaintiff expressly pleaded that Defendants are affiliates, that "Elevate Labs, LLC and MindSnacks, Inc. jointly operate, control, program, and run the Balance App," and "jointly derive a benefit from the App," Compl. ¶¶ 11-13, and insists that MindSnacks is a nonsignatory that cannot enforce the Arbitration Agreement. But as Defendants' Motion made clear, under common law principles of agency and contract law, as well as principles of estoppel, courts regularly allow non-signatory affiliates to enforce arbitration agreements against signatories where the allegations are intertwined with those against a signatory. Plaintiff's Opposition focuses only on the concept of equitable estoppel, ignoring the Ninth Circuit precedent and well-settled law on contract and agency cited in the Motion—and, notably, does not cite a single case where a court has refused to apply these principles where the plaintiff himself has alleged that the defendants are affiliates who jointly committed the purported conduct.

As a last-ditch effort, Plaintiff argues that the dispute does not fall within the scope of the Arbitration Agreement. But none of the cases Plaintiff cites involve an arbitration agreement with the broad language used here, where Plaintiff agreed to arbitrate "all disputes, claims, or controversies arising out of or relating to the Terms of Service ***or the*** Service," which is defined at the very beginning of the Terms to include Defendants' website "***and its mobile applications and related services***." Ex. B at 2, 16. [2] Plaintiff's claim arises out of and clearly relates to the Service—it is entirely based on Plaintiff's use of Defendants' mobile application. And Plaintiff's argument that his dispute exists independently of the Terms is equally unconvincing. Plaintiff cannot contest his assent to the Terms and simultaneously assert that his claim exists independently of them. With the facts against him, Plaintiff resorts to misdirection and confusion to argue against the obvious: this dispute arises under Balance's Terms.

[2] "Ex. _" citations refer to the exhibits filed in connection with Defendants' opening brief.

## ARGUMENT

### I. The Motion Demonstrated that Plaintiff Had Reasonably Conspicuous Notice of the Terms and Agreed to the Terms.

Both parties agree that California law governs the question of contract formation here. To form a contract, there must be actual or constructive notice of the agreement, and "the parties must manifest their mutual assent to the terms of the agreement." Opp. at 2 (citing *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 855 (9th Cir. 2022)). Both also agree that inquiry notice is established when: "(1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his assent to those terms." Opp. at 3 (citing *Berman* 30 F.4th at 856). But while Plaintiff relies upon a crabbed reading of *Berman* to assert that Defendants meet neither prong for inquiry notice, this Court's holding in *Ghazizadeh v. Coursera*, which interprets and applies *Berman*, decisively refutes that claim. *See* Opp. at 3-5; *Ghazizadeh*, 737 F. Supp. 3d at 928-29 (applying *Berman* to hold that "on balance and considering the full context of the hyperlink as presented," a sign-up screen with gray bolded text on a lighter gray background, located below a more colorful sign-up button, provided conspicuous notice to a user).

Plaintiff's argument that Defendants' sign-up page did not provide him with reasonably conspicuous notice is out of step with what courts in this Circuit have repeatedly held. Defendants' sign-up page is classic "sign-in wrap," whereby "users are notified of the existence of the website's terms of use and advises a user that by making some type of affirmative act, often by clicking a button, she is agreeing to the terms of service." *Moyer v. Chegg, Inc.*, 2023 WL 4771181, at *4 (N.D. Cal. July 25, 2023). For sign-in wrap to be reasonably conspicuous to the user, notice "must be displayed in a font size and format such that the court can fairly assume that a reasonably prudent Internet user would have seen it." *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 515 (9th Cir. 2023) (quoting *Berman*, 30 F.4th at 856). The context of the transaction is an "important factor to consider and key to determining the expectations of a typical consumer," as most consumers would understand that they need to agree to a set of terms when first using a mobile application. *See Keebaugh v. Warner Bros.*

*Ent. Inc.*, 100 F.4th 1005, 1019 (9th Cir. 2024) (citing *B.D. v. Blizzard Entm't., Inc.* 292 Cal. App. 5th 931, 947 (Cal. Ct. App. Mar. 29, 2022)).

***First***, Plaintiff's pedantic argument that the hyperlinks are not sufficiently recognizable because they appear in a bold gray font on a lighter gray background ignores the extensive caselaw in this Circuit stating otherwise. Opp. at 6-7. Plaintiff overextends this argument by asserting that the hyperlinks lack sufficient contrast with the background to the extent that they are "barely legible to the naked eye." Opp. at 6 (quoting *Berman*, 30 F.4th at 856). This is nonsensical. Below is a screenshot of the sign-up page Plaintiff viewed on his mobile device when he created an account on the Balance App. Ex. A. Keeping in mind that this sign-up screen would appear larger on a mobile device than the reproduction below, the words "Terms & Conditions" and "Privacy Policy" are hardly invisible.




And numerous courts have held that inquiry notice was established even when a hyperlink used text of a lighter or darker shade of the background color, including a muted gray font. In *Lee v. DoNotPay, Inc.*, 683 F. Supp. 3d 1062, 1070, 1073-74 (C.D. Cal. July 20, 2023), the court rejected an argument that the "small, transparent gray font" of the notice was inconspicuous after analyzing several sign-up flows with grey font that other courts had deemed sufficient for inquiry notice. *See also Pizarro v. QuinStreet, Inc., No. 22-cv-02803-MMC,* 2022 WL 3357838, at *3 (N.D. Cal. Aug.

15, 2022) (approving of grey font on a white background where "the general design of the webpage, which is comprised of only two data fields", was "uncluttered" and had a "muted" color scheme); *Peter v. Doordash, Inc.*, 445 F. Supp. 3d 580, 586 (N.D. Cal. Apr. 23, 2020) (holding that "despite Plaintiff's characterization of the font as gray-on-gray, the text contrasts clearly with the background and is plainly readable"). The same color scheme here makes notice conspicuous and clear.

***Second***, Plaintiff's argument that the "barely legible gray text" stands in "stark contrast" to the brightly-colored buttons in the middle of the sign-up page which "draw the user's attention away" is unsupported. Opp. at 7-8. The presence of a brightly colored "Sign Up" button has not prevented courts from finding conspicuous notice. In *Pizarro*, 2022 WL 3357838, at *3, the sign-up flow featured a bright orange button, followed by several paragraphs of light gray text in a very small font on a white background. This did not preclude the court from finding that the defendant's notice was conspicuous "when viewed in the context of the overall design and content of the webpage,'" nor should it here where the *only* text on Balance's sign-up page, apart from the sign-up buttons, is their terms disclosure. *See also Lee*, 683 F. Supp. at 1067, 1070 (holding the same for a screen with a magenta sign-up button).

***Third***, Plaintiff's fussing with the location of the hyperlinks, speculating that a user "would likely click without looking at anything else" because the hyperlink is below the sign-up buttons, with some gray space in between, ignores the fact that the entire sign-up page is visible at once from the screen of a smartphone. Opp. at 8. Plaintiff speculates the hyperlinks are so far below the sign-up button that a hypothetical user would not see them. *Id.* This is illogical. The entire sign-up page is captured in the above image, and fits on the screen of a mobile phone. Walls Decl. ¶ 7. The user need not scroll to see this text, nor is it buried below paragraphs of additional disclaimers like in *Pizarro*. *See* 2022 WL 3357838, at *1. The hyperlinks to the Terms and Privacy Policy are the *only* content on the sign-up page besides the sign-up buttons. And courts have consistently enforced terms where a hyperlink was below the sign-up button and not buried on a cluttered sign-up screen. *See Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 78 (2d Cir. 2017) (holding defendants provided users sufficient notice of its terms and conditions where the screen was "uncluttered," and "[t]he entire screen [wa]s visible at once" such that the user did "not need to scroll beyond what is immediately visible to find notice of the Terms of Service"); *DoorDash*, 445 F. Supp. 3d at 586 (holding the same where the screen was

"uncluttered and wholly visible"); *Oberstein*, 60 F.4th at 517 (finding notice conspicuous where "notices were not buried on the bottom of the webpage").

***Finally***, while Plaintiff is correct that the "context of the transaction" is a "non-dispositive factor under California law," his refusal to address Defendants' argument about the nature of his relationship with the Balance App as a registered user—because, according to Plaintiff, Defendants' alleged failure to provide notice is dispositive—misses the forest for the trees. *See* Opp. at 9-10 (*citing Keebaugh*, 100 F.4th at 1019). Under the holistic framework used by courts in this Circuit, Defendants have provided conspicuous notice.

In distinguishing Defendants' caselaw, Plaintiff retreads the same unconvincing, nit-picking arguments about the sign-up screen. Allegedly, Defendants should not have cited *Silva* because there, the hyperlinked text was blue, or *Dean* because the hyperlink there was above the sign-up button and not below. *See* Opp. at 9-10 (citing *Silva v. WhaleCo, Inc.*, 2024 WL 4487421, at *4 (N.D. Cal. Oct. 10, 2024); *Dean v. OKCoin USA Inc.*, 2024 WL 3522207, at *1 (N.D. Cal. July 23, 2024)). Plaintiff even takes the downright bizarre position that the Court's reasoning in *Coursera* weighs *against* a finding of conspicuous notice for Defendants because there, this Court held that the bolded, dark gray (non-underlined, non-capitalized) text "adequately contrast[ed]" with the light gray background. But these comparisons are short-sighted: no one font or formatting choice is dispositive of whether Balance's terms are conspicuous, and any determination should be based on the "totality of the presentation," which is very similar here, if not more conspicuous, to that in *Coursera.* 737 F. Supp. 3d at 928 (finding hyperlink conspicuous because it "appears on a screen that is simple and lacks clutter," despite the fact that the hyperlink was not "blue, underlined, or capitalized"); *compare with Berman*, 30 F.4th at 860-61 (holding notice was not conspicuous where sign-up page was cluttered with additional text that "direct[ed] the user's attention everywhere else" and "away from the barely readable critical text"). Here, the overall simplicity and uncluttered design of Balance's sign-up page strongly support a finding that notice was conspicuous.

Ultimately, Balance presented terms on its sign-up page that would clearly be conspicuous for any "reasonably prudent Internet user." Plaintiff assented to those Terms through his creation of an

account on Balance's mobile application, and continued use of the application thereafter. Motion at 9. The Court should enforce the parties' agreement and compel arbitration.

**II. Questions of Arbitrability or Enforceability Must Be Decided by an Arbitrator.**

In their opening brief, Defendants showed that by Plaintiff's assent to the Arbitration Agreement—which expressly incorporates JAMS rules into the parties' agreement—Plaintiff agreed to have an arbitrator determine questions of scope and arbitrability. Motion at 9. Plaintiff bifurcates his response as to the two Defendant entities. First, as to Elevate, Plaintiff argues that a clause incorporating the JAMS rules is unenforceable because, Plaintiff suddenly claims, he is not sophisticated enough as a consumer to be bound by such language. Second, as to MindSnacks, Plaintiff argues that the Court must decide any questions of arbitrability because the Agreement does not apply to MindSnacks as a third-party. Neither argument is availing.

**A. Plaintiff's Argument that Elevate Cannot Enforce the Terms of the Agreement Also Fails.**

Plaintiff's argument that Elevate cannot enforce the terms of the Agreement delegating questions arbitrability to an arbitrator against him relies on a misapplication of *Patrick v. Running Warehouse, LLC*, 93 F.4th 468 (9th Cir. 2024) and *Brennan v. Opus Bank*, 796 F.3d 1125 (9th Cir. 2015), which together may be read to hold that the Parties expressly incorporated JAMS arbitration rules, which delegate arbitrability to the arbitrator. While the Ninth Circuit has not determined whether *Brennan* applies to a contract with an unsophisticated consumer, Plaintiff has not pled any specific facts indicating he is not sophisticated, and the Court need not reach this issue here.

In *Brennan*, the Ninth Circuit held that "incorporation of the [American Arbitration Association ("AAA")] rules," which state that the arbitrator "shall have the power to rule on his or her own jurisdiction," "constitute[d] clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability." 796 F.3d at 1128, 1130. The court limited its holding to the facts of the case, which involved an arbitration between "sophisticated parties," as plaintiff was an "experienced attorney and businessman" and defendant was a regional financial institution. *Id.* at 1131. But the court was clear that "[o]ur holding [in this case] should not be interpreted to require that the contracting parties be sophisticated or that the contract be "commercial" before a court may conclude that

incorporation of the AAA rules constitutes clear and unmistakable evidence of the parties' intent. Thus, our holding does not foreclose the possibility that this rule could *also apply to unsophisticated parties* or to consumer contracts." *Id*. at 1130 (emphasis added).

The Ninth Circuit later explicitly extended *Brennan*'s rationale to the incorporation of the JAMS rules in *Patrick*. 93 F.4th at 481 ("Although our circuit has not previously, in a published opinion, extended *Brennan*'s rationale to the incorporation of the JAMS rules, we agree with the district court and do so here"). However, the Court did not reach the issue of whether to extend *Brennan* broadly to consumer contract between "a sophisticated entity and an average unsophisticated consumer" because plaintiffs "offered no evidence concerning their sophistication or lack thereof," and it remains an open question in the Ninth Circuit. *Id.* at 481.

District courts are split, but, as described *supra*, the Court in *Brennan* went out of its way to avoid "foreclose[ing] the possibility that [*Brennan*'s] rule could also apply to unsophisticated parties." 796 F.3d at 1130. Naturally, Plaintiff cites a string of cases in which courts in this Circuit held that courts must determine arbitrability where the non-drafting party is "unsophisticated." See Opp. at 13 (citing, for example, *Ruiz v. Kelly Serv. Glob. LLC*, 2024 WL 3618222, at *5 (E.D. Cal. Aug. 1, 2024). But there are just as many instances in which courts have held the opposite. *See e.g.*, *Maybaum v. Target Corp.*, No. 2:22-CV-00687-MCS-JEM, 2022 WL 1321246, at *5 (C.D. Cal. May 3, 2022) ("[T]he majority of courts have concluded that Brennan applies equally to sophisticated and unsophisticated parties."), and *Cordas v. Uber Techs., Inc.*, 228 F. Supp. 3d 985, 992 (N.D. Cal. Jan. 5, 2017) (stating "the clear weight of authority supports the conclusion" that incorporation of AAA rules "provide[s] clear and unmistakable evidence of the parties' intent to delegate ... arbitrability" regardless of the sophistication of the parties).

In *Patrick*, as here, plaintiffs were users of defendants' website whose claims arose from defendants' alleged sharing of plaintiffs' personally identifiable information collected when plaintiffs created accounts and/or purchased goods from defendants' website. *Id.* at 474-75. And as in *Patrick*, Plaintiff has offered no specific evidence concerning his sophistication or lack thereof in either his complaint or opposition to Defendants' Motion. *See id.* at 481; Compl. at 2-3; Opp. at 14. Unlike in *Calzadillas v. Wonderful Co.*, which Plaintiff cites, where the court found that seasonal agricultural

workers were unsophisticated where it was "unclear what level of education each has attained," No. 1:19-cv-00172-DAD-JLT, 2019 WL 2339783, at *5 (E.D. Cal. June 3, 2019), here Plaintiff only asserts that he is an "ordinary consumer" and "not a lawyer." Opp. at 14. Surely the court in *Brennan* and *Patrick* did not intend to bar the enforcement of arbitration association rules against anyone who is "not a lawyer."

Further, Plaintiff has never pleaded that he is "not a lawyer," nor has he filed any declaration stating so.[3] Under Rule 15(A)(1)(B), Plaintiff could have freely amended his complaint to include these facts within 21 days of Defendants' filing of their motion to compel arbitration under Rule 12(b). *See* Fed. R. Civ. P. 15; *Ramirez v. Cnty. of San Bernardino*, 806 F.3d 1002, 1008 (9th Cir. 2015) (applying Federal Rule of Civil Procedure 15(A)(1)(B) to permit amendment within 21 days of the filing of a 12(b)(6) motion). Plaintiff has not done so. It is improper for Plaintiff to attempt to introduce new facts through his opposition to a 12(b)(6) motion, and the Court should reject his attempt. *See Romero v. HP, Inc.*, No. 16-CV-05415-LHK, 2017 WL 386237, at *6 (N.D. Cal. Jan. 27, 2017) (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984) ("it is axiomatic that the complaint may not be amended by brief in opposition to motion to dismiss"). Ultimately, Plaintiff has offered no competent evidence of his lack of sophistication, and as in *Patrick*, the Court should find this does not preclude a holding that the Parties clearly delegated arbitrability when they assented to a contract incorporating JAMS rules.

### B. The Arbitration Agreement Applies to MindSnacks as an Affiliate of Elevate.

Plaintiff's assertion that the Court should treat Defendants MindSnacks and Elevate differently as to the Arbitration Agreement's delegation language fails because it directly contradicts Plaintiff's effort to treat Defendants interchangeably in the Complaint. There, Plaintiff expressly alleges that the two entities "jointly operate, control, program, and run the Balance App." Compl. ¶ 13. His transparent attempt to change tack now is unconvincing.

Plaintiff cites to *Patterson* to argue that there is no "clear and unmistakable evidence" that

[3] Plaintiff cites to *Lewis v. Kelly Servs. Glob., LLC*, Case No. 2:24-cv-06781-JLS-AGR, 2024 WL 5220080, at *4 (C.D. Cal. Nov. 7, 2024), for support, ignoring the distinction that the *Lewis* plaintiff pled specific facts in his complaint related to his age and occupation that assisted the court in finding he was unsophisticated relative to the nationwide temp agency that had moved to compel him to arbitration. *Id.*

Plaintiff and Elevate "agreed to delegate issues of arbitrability to the arbitrator with regards to claims against third-party MindSnacks," but this only serves to highlight the strong connection between the two Defendants here. Opp. at 11 (citing *Patterson v. Jump Trading LLC*, 710 F. Supp. 3d 692, 708 (N.D. Cal. Jan. 4, 2024)). In *Patterson*, the plaintiff assented to an arbitration agreement with Terraform Labs ("TFL"), a blockchain payment platform who had collaborated with the defendant, Jump Trading LLC ("Jump"), a trading firm, on a series of financial transactions and public statements to stabilize the value of certain cryptocurrency tokens. *Id.* at 699-700. Jump and TFL were completely independent entities with different purposes and leadership, and headquartered in different countries. *Id.* There, the Court was "reluctant to conclude" that parties intended to arbitrate all questions of arbitrability "arising in any dispute they might have with any third party anywhere else in the world," because Jump was not an affiliate of TFL, and the entities' relationship did not suggest that either party would have intended that Jump be permitted to enforce TFL's arbitration agreement. *Id.* at 708. But MindSnacks is not "any third party anywhere else in the world." Far from it: in Plaintiff's own words, MindSnacks and Elevate are affiliated companies that jointly operate the Balance App. Compl. ¶¶ 11, 13. Unlike in *Patterson*, MindSnacks and Elevate are *both* Defendants, and Plaintiff refers to them collectively exclusively throughout his Complaint. *See, e.g.*, *id*. ¶¶ 28-29, 38-40, 49-52. He does not differentiate his allegations against the two at any point, and brings each cause of action jointly against both Elevate and MindSnacks. *See id*. ¶¶ 78, 87, 96. Moreover, it takes little imagination to see that the parties intended that MindSnacks be permitted to enforce Elevate's Terms where a party brought claims jointly and indistinguishably against the two parties.

Here, there are two reasons why there is no basis for treating the two Defendants differently. First, Balance's Terms are far broader than the language in the cases Plaintiff cites, which are expressly limited to disputes between the plaintiff and defendant. There is no such limitation here: to the contrary, the Arbitration Agreement broadly sweeps in "***all disputes, claims or controversies arising out of or relating to the Terms of Service*** or the Service that are not resolved by mutual agreement may be resolved by binding arbitration…" Ex. B at 15 (emphasis added). This is distinct from the more limited arbitration clause in the *Kramer* decision upon which Plaintiff relies, which was limited to disputes relating to "the vehicle, your credit application, this contract, the sale or financing of the

vehicle, and any collection activities." *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, at 1124-25 (9th Cir. 2013). In fact, *Toyota* has been distinguished on this basis where the facts at issue demonstrate a broader application. *See Misenheimer v. Rolls-Royce Motor Cars NA, LLC*, *No. CV 20-2288-RSWL-SKx,* 2020 WL 5372357, at *5 and n. 5 (C.D. Cal. July 20, 2020) (distinguishing *Kramer* and holding that an arbitration clause which encompassed "any claim, dispute or controversy" between plaintiff and a lessor to a lease agreement also encompassed the plaintiff's claims against the defendant's nonsignatory affiliate). Here, there is no language limiting the application of the Arbitration Agreement (or its delegation language) to Plaintiff and Elevate. *See id.* ("the Court is not persuaded by Plaintiff's arguments because the language of the arbitration clause in *Kramer* was narrower than in this Action").

Second, the language and structure of the Complaint itself make clear that the conduct alleged against both entities is intertwined with the Terms and Privacy Policy Plaintiff agreed to when he created his account. To be clear, the entire basis of Plaintiff's claim is that his data was allegedly shared without his consent by Defendants via the Balance App. But he gave his consent when he proceeded to create an account on the Balance App, assenting to the same Terms that include the arbitration clause. *See* Ex. B at 17 ("At Balance, we respect the privacy of our users. For details please see our Privacy Policy. By using the Service, you consent to our collection and use of personal data as outlined therein") and ("You may be required to register with Balance in order to access and use certain features of the Service. If you choose to register for the Service, you agree to provide and maintain true, accurate, current and complete information about yourself as prompted by the Service's registration form. Registration data and certain other information about you are governed by our Privacy Policy."). Clearly, then, Plaintiff's claims against both Defendants are directly intertwined with the consent provided for sharing data on the Balance App, which Plaintiff himself alleges is jointly managed by Defendants. Plaintiff does not distinguish between Elevate and MindSnacks in his Complaint. The Court should not either.

**III. Plaintiff's Claims Plainly Fall Within the Scope of the Arbitration Agreement.**

In their opening brief, Defendants explained that the scope of the Arbitration Agreement clearly encompasses Plaintiff's claims because it covers "all disputes, claims, or controversies arising

out of or relating to the Terms of Service or the Service," and "Service(s)" is expressly defined to include the Balance App. Motion at 10 (citing Ex. B at 2, 16). In response, Plaintiff does not confront Defendants' argument head-on, and instead relies on a tortured application of *Jackson v. Amazon.com, Inc.* to assert that Plaintiff's claims do not arise out of, or relate to, the Terms. Opp. at 15-16 (citing 65 F.4th 1093 (9th Cir. 2023)). Plaintiff's argument fails. Plaintiff's claims cannot possibly exist independently of the terms when Plaintiff is contesting his consent to the same terms.

As Defendants have made clear, the Arbitration Agreement is written broadly to encompass disputes and claims arising out of the ***Service***, which is defined at the beginning of the Terms to include Defendants' website "***and its mobile applications*** and related services." Motion at 10 (citing Ex. B at 2, 16 (emphasis added)). Plaintiff's claims against Defendants arise entirely out of Plaintiff's use of the Balance App, and thus arises out of the Service. *See* Compl. ¶ 10. Plaintiff entirely ignores the fact that the scope of the Arbitration Agreement broadly covers not just disputes regarding the Terms but the Service as well.

Moreover, Plaintiff's claims are within the scope of the Arbitration Agreement because it does relate to the disclosures in the Terms that he is now challenging. Motion at 11 (citing Ex. B at 16). Plaintiff offers no response or rebuttal of this argument, nor can he—instead, he strings together inapposite caselaw to set forth a theory that his claims exist independently of the Terms. But this theory finds no support in the cases Plaintiff cites. *See, e.g.,* Opp. at 16 (citing *Howard v. Goldbloom*, 30 Cal. App. 5th 659, 670 (2018), where Plaintiff's claims arose out of his rights as a company stockholder and any stockholder could bring the same claims, so the court held the claims existed independently the scope of the arbitration agreement in Plaintiff's employment contract).

Plaintiff next cites *Jackson*, in which the Ninth Circuit held that Amazon Flex drivers' claims that Amazon had monitored and wiretapped the drivers' conversations in closed Facebook groups fell outside the scope of the arbitration clause in Amazon's Terms of Service because Jackson's claims did not depend on any terms of his employment contract as a driver for Amazon Flex. 65 F.4th at 1102. There, Jackson's allegations "involved employer misconduct wholly unrelated to the parties' agreement." *Id.* Because the controversy was about whether Amazon was liable for wiretapping and invasion of privacy, and had no nexus to the "characteristics or conduct" of participants in the Flex

program, the court held that it did not touch the contract which governed participants in the Flex program nor fall within that contract's arbitration clause. *Id.* at 1103.

That is not what happened here. Here, Plaintiff signed up for the Balance App, which requires assent to the Balance App's Terms and Privacy Policy. Walls Decl. ¶ 6. The Terms disclose Defendants' policies on sharing information with third-parties and require arbitration of related claims by App users. Ex. B at 1. Plaintiff alleges that Defendants shared personally identifiable information Plaintiff transmitted through his use the Balance App with third parties, and challenges Defendants' Motion partially on the basis that he did not consent to those Terms. Compl. ¶ 4; Opp. at 2. Unlike *Jackson*, where Amazon's alleged wiretapping would have been illegal whether the subjects of such spying had a contractual agreement with Amazon or not, here the dispute arises between Balance and a user of the Balance App, from his use of the application, under the Terms of the user agreement, and whether the user consented to those Terms. *See id.* at 1104. Plaintiff's assertion that his claims exist independently of the Terms fundamentally misunderstands the Ninth Circuit's holding, as his claims unequivocally arise out of or relate to the Terms.

## IV. MindSnacks Can Enforce the Terms and Arbitration Agreement.

Finally, Plaintiff mischaracterizes and ignores Defendants' argument by suggesting that the Court should separate Defendants for arbitration purposes, despite Plaintiff's conflation of Defendants and allegations of intertwined conduct in the Complaint. Plaintiff incorrectly argues that MindSnacks's sole basis for seeking to enforce the Arbitration Agreement in the Motion was "under principles of equitable estoppel." Opp. at 16. Defendants made clear there are many circumstances under California law where non-signatories are entitled to enforce arbitration clauses, citing several cases in this Circuit holding that nonsignatories can enforce arbitration agreements under ordinary contrary and agency principles, particularly when, as here, the Plaintiff's allegations show that the Defendants are affiliates and the claims against them are intertwined. *See* Motion at 11 (citing cases). Plaintiff fails to offer any response on this point, and thus waives the issue: on this basis alone, the Court should grant the Motion. *See Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 802 F. Supp. 2d 1125, 1132 (C.D. Cal. 2011) ("failure to respond in an opposition brief to an argument put forward in an opening brief constitutes waiver or abandonment in regard to the uncontested issue").

Even if Plaintiff had not waived his opportunity to respond to Defendants' argument that nonsignatory affiliates can enforce an arbitration agreement where claims asserted against them are intertwined, he would lose that argument. The cases Defendants cite in their Motion make clear that courts have repeatedly enforced such agreements involving nonsignatory affiliates, employees, and other related parties. *See, e.g., Letizia v. Prudential Bache Sec., Inc.*, 802 F.2d 1185, 1187 (9th Cir. 1986) (citing cases enforcing arbitration agreements on behalf of nonsignatory employees); *Marselian v. Wells Fargo & Co.*, 514 F. Supp. 3d 1166, 1172 (N.D. Cal. Jan. 20, 2021) (quoting *NORCAL Mut. Ins. Co. v. Newton*, 84 Cal. App. 4th 64, 76 (2000) as holding, "the common thread [in holding nonsignatories bound by arbitration contracts] is the existence of an agency or similar relationship between the nonsignatory and one of the parties to the arbitration agreement"). Indeed, in *Marselian*, the court enforced an arbitration agreement on behalf of a corporate affiliate (a holding company), noting that "Plaintiff refers collectively to Defendants as "Wells Fargo," and does not attempt to distinguish the holding company's conduct versus the bank's conduct." 514 F. Supp. 3d at 117.2. That is exactly the case here: Plaintiff refers to the Defendants collectively, and alleges they are affiliates jointly responsible for intertwined conduct in the Complaint. Defendants' Motion and courts in this District have stated that arbitration must be compelled as to nonsignatory affiliates alleged to have committed joint conduct, otherwise "arbitration proceedings between the two signatories would be rendered meaningless and the federal policy in favor of arbitration effectively thwarted." *Fujian Pac. Elec. Co. Ltd. v. Bechtel Power Corp.*, 2004 WL 2645974, at *5 (N.D. Cal. Nov. 19, 2004) (internal citations and quotations omitted).

Plaintiff's sole attempt to remove MindSnacks from the Arbitration Agreement is to argue that, as to equitable estoppel, it does not apply here because his claims "do not depend on the Terms" and "are not dependent on, or otherwise intertwined, with the Terms." Opp. at 17.[4] Plaintiff is wrong. First,

[4] Plaintiff's Opposition offers a faulty argument that Defendants did not raise and somehow waived an argument regarding the "interdependent and concerted misconduct" alleged by Plaintiff. Opp. 17 n. 3. This is nonsense. Defendants expressly argued that Plaintiff's allegations among the Defendants were "intertwined" and interdependent—introducing the issue in its background section and then making that express argument, Motion at 3-4, 11—and it is Plaintiff who never responded to that argument. As Plaintiff acknowledges, this is an independent basis for equitable estoppel that he has no response to. Regardless, there is no basis for Plaintiff's "gotcha" argument that Defendants somehow waived an opportunity to respond to an argument that is directly contrary to Plaintiff's allegations and raise for the first time in his Opposition is specious—this is the entire point of a reply

even under Plaintiff's argument, Plaintiff would not be entitled to somehow proceed piecemeal against MindSnacks for the conduct that Plaintiff himself alleges was jointly conducted by Elevate—to the contrary, his claims against MindSnacks would need to be stayed. *See Translarity, Inc. v. Grand Junction Semiconductor PTE. Ltd.*, No. 24-cv-02423-SI, 2024 WL 4634059, at *11 (N.D. Cal. Oct. 29, 2024) (staying claims closely related to claims in arbitration). Second, the ***entire basis*** for Plaintiff's claim is that the data alleged disclosed on the Balance App was shared without his consent—his Complaint makes clear that this is an essential element that the Court must determine in assessing liability. Compl. ¶¶ 5-6 (VPPA and CIPA only allow for liability where there is a disclosure without consent). Plaintiff's claims thus require the Court to resolve whether Plaintiff consented to the disclosure in the Terms he agreed to—which he did. *See* Terms ("At Balance, we respect the privacy of our users. For details please see our Privacy Policy. By using the Service, you consent to our collection and use of personal data as outlined therein."). These Terms contain the Arbitration Agreement Plaintiff is now trying to avoid. Thus, Plaintiff's argument that his claims are not intertwined with the Terms is incorrect, and the cases he cites (which do not involve this scenario) are inapposite. To the contrary, where, like here, the issues that the Court will decide are intertwined with the same contract containing the arbitration clause, equitable estoppel is regularly applied. *See, e.g., Larson v. Living Vehicle, Inc.*, No. 24-cv-00598-DSF-MAA, 2024 WL 3298294, at *4 (C.D. Cal. May 14, 2024) (compelling arbitration with nonsignatory who asserted "theories of agency, third-party beneficiary status, and equitable estoppel"); *Wolf v. ClubCorp USA, Inc.*, Case No. 22-cv-1688-MMA, 2023 WL 4306693, at * (S.D. Cal. June 20, 2023) ("Plaintiff is compelled to arbitrate her claims against [nonsignatory] under either prong of the Ninth Circuit's equitable estoppel test").

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant Defendants' Motion to Compel Arbitration and stay Plaintiff's claims.

---

brief. *See Synopsys, Inc. v. Mentor Graphics Corp.*, No. 12-6467 C MMC, 2013 WL 6577143, at *1 (N.D. Cal. Dec. 13, 2013) (rejecting request for sur-reply where defendant properly responded to arguments made in plaintiff's opposition).

Date: February 21, 2025

**SIDLEY AUSTIN LLP**

By: */s/ Sarah E. Gallo*

Sarah E. Gallo (SBN 335544)
sgallo@sidley.com
555 California Street, Suite 2000
San Francisco, CA 94104
Telephone: (415) 772-1200

Ian M. Ross (admitted *pro hac vice*)
iross@sidley.com
1001 Brickell Bay Drive, Suite 900
Miami, FL 33131
Telephone: (305) 391-5100

*Attorneys for Defendants*
*Elevate Labs, LLC and MindSnacks, Inc.*