UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JONATHAN KROSKEY,<br><br>  Plaintiff,<br><br>v.<br><br>ELEVATE LABS, LLC, et al.,<br><br>  Defendants. | Case No.  5:24-cv-08113-EJD<br><br>**ORDER GRANTING MOTION TO COMPEL ARBITRATION**<br><br>Re: Dkt. No. 14 |

Plaintiff, Jonathan Kroskey ("Plaintiff"), on behalf of himself and a class of other similarly situated individuals, brings claims against Defendants Elevate Labs, LLC ("Elevate Labs") and MindSnacks, Inc., ("MindSnacks") (collectively, "Defendants"), affiliated entities that jointly own and operate a mobile meditation application called Balance: Mediation & Sleep ("Balance App"). Compl., ECF No. 1.  Plaintiff alleges that Defendants disclosed their users' personally identifiable information to a third party without authorization in violation of various federal and California state privacy laws.  *Id.*  Before the Court is Defendants' motion to compel arbitration pursuant to the Balance App's Terms of Service.  Mot., ECF No. 14.  This motion is fully briefed.  Opp'n, ECF No. 21; Reply, ECF No. 29.

Having carefully reviewed the relevant documents, the Court finds this matter suitable for decision without oral argument pursuant to Local Rule 7-1(b).  For the reasons explained below, the Court **GRANTS** Defendants' motion to compel arbitration.

Case No.: 5:24-cv-08113-EJD
ORDER GRANTING MOTION TO COMPEL ARBITRATION
1

## I. BACKGROUND

Plaintiff purchased a subscription membership to the Balance App in July 2023. Compl. ¶ 9. While signing up for a membership, he was directed to an account creation page on the Balance App that reads at the bottom: "By creating your account, you agree to Balance's **Terms & Conditions** and **Privacy Policy**." Mot., Ex. A ("Sign Up Screen"), ECF No. 14-2 (emphasis in original). All text in this sentence appears in grey and in the same font and size:



*Id.*

When a user clicks on "**Terms & Conditions**," they are led to a document titled "Terms of Service." Mot., Ex. B, ECF No. 14-3. After one paragraph of text, the document states in italicized font:

Case No.: 5:24-cv-08113-EJD
ORDER GRANTING MOTION TO COMPEL ARBITRATION

2

> *Arbitration Notice*
>
> *Unless you opt of arbitration within 30 days of the date you first agree to those terms, you agree that (1) you will only be permitted to pursue claims against Balance on an individual basis, not as a plaintiff or class member in any class or representative action or proceeding, (2) you will only be permitted to seek relief (including monetary, injunctive, and declaratory relief) on an individual basis, and (3) you may not be able to have any claims you have against us resolved by a jury or in a court of law.*

Mot., Ex. B, ECF No. 14-3 (emphasis in original).

The full agreement regarding arbitration is found further down the document under the bolded title "**Arbitration**," followed by the description: "**Dispute Resolution by Binding Arbitration: PLEASE READ THIS SECTION CAREFULLY AS IT AFFECTS YOUR RIGHTS**" ("Arbitration Clause"). *Id.* (emphasis in original). The Arbitration Clause then provides in relevant part:

> At Balance's or your election, all disputes, claims, or controversies arising out of or relating to the Terms of Service or the Service that are not resolved by mutual agreement may be resolved by binding arbitration to be conducted before JAMS, or its successor." The Terms define the "Service" as Defendants' "mobile applications and related services," including the website, and any new features and applications. The Arbitration Agreement also provides that any arbitration shall be "conducted in accordance with the rules and regulations promulgated by JAMS unless specifically modified in the Terms of Service." Under the JAMS rules for consumer arbitrations, the JAMS-appointed arbitrator must decide any disputes regarding the formation, existence, validity, interpretation, or scope of an arbitration agreement.

*Id.* (internal citations omitted).

The Terms of Service indicates that it is an agreement between Plaintiff and Elevate Labs. *Id.* The agreement does not reference affiliate Defendant MindSnacks. *Id.*

## II.     LEGAL STANDARD

The Federal Arbitration Act ("FAA") provides that a "written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

Case No.: 5:24-cv-08113-EJD
ORDER GRANTING MOTION TO COMPEL ARBITRATION

3

1  As this language makes clear, "an arbitration agreement is a contract like any other." *Bielski v.*
2  *Coinbase, Inc.*, 87 F.4th 1003, 1009 (9th Cir. 2023). And like other contracts, arbitration
3  agreements are subject to generally applicable state law contract defenses. *Lim v. TForce Logs.,*
4  *LLC*, 8 F.4th 992, 999 (9th Cir. 2021). In determining whether to compel a party to arbitrate, the
5  court must determine: "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether
6  the agreement encompasses the dispute at issue." *Kilgore v. KeyBank, Nat. Ass'n*, 718 F.3d 1052,
7  1058 (9th Cir. 2013) (internal quotation marks and citation omitted). Once it is established that a
8  valid agreement to arbitrate exists, the burden shifts to the party seeking to avoid arbitration to
9  show that the agreement should not be enforced. *Green Tree Fin. Corp.-Alabama v. Randolph*,
10 531 U.S. 79, 92 (2000).

11 Parties seeking to avoid arbitration are subject to the same standards applicable to parties
12 opposing summary judgment under Federal Rule of Civil Procedure 56. *See Hansen v. LMB*
13 *Mortg. Servs., Inc.*, 1 F.4th 667, 670 (9th Cir. 2021) (finding summary judgment standard is
14 appropriate because order compelling arbitration "is in effect a summary disposition of the issue of
15 whether or not there had been a meeting of the minds on the agreement to arbitrate"). Therefore,
16 the moving party bears the initial burden of informing the court of the basis for the motion. *Curry*
17 *v. Matividad Med. Ctr.*, No. 5:11-CV-04662-EJD, 2013 WL 2338110, at *1 (N.D. Cal. May 28,
18 2013) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). If the moving party meets this
19 initial burden, the burden then shifts to the opposing party to present specific facts showing that
20 there is a genuine issue for trial. *Id.*, at *2.

21 **III.   DISCUSSION**
22 The Court finds that the Arbitration Clause in the Terms of Service is a valid and
23 enforceable contract, and the Court reserves questions regarding arbitrability to the arbitrator
24 pursuant to the parties' express agreement.

### A. Validity of Arbitration Clause

To form a contract under California law, there "must be actual or constructive notice of the agreement and the parties must manifest mutual assent." *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 512–13 (9th Cir. 2023). The "principle of knowing consent" required to establish contract formation "applies with particular force to provisions for arbitration," *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 566 (9th Cir. 2014), and with equal force to contracts formed online, *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 855–56 (9th Cir. 2022).

In the online context, internet contracts are classified "by the way in which the user purportedly gives their assent to be bound by the associated terms" and generally fall on a spectrum ranging from "clickwrap" to "browsewrap." *Keebaugh v. Warner Bros. Ent. Inc.*, 100 F.4th 1005, 1014 (9th Cir. 2024) (citing *Sellers v. JustAnswer LLC*, 289 Cal. Rptr. 3d 1, 16 (Cal. 2021)); *see also Berman*, 30 F.4th at 856. "[C]lickwrap" agreements are agreements in which a website presents users with specified contractual terms on a pop-up screen and users must check a box explicitly stating "I agree" in order to proceed. *Berman*, 30 F.4th at 856. Browsewrap agreements, on the other end of the spectrum, are agreements in which a website offers terms that are disclosed only through a hyperlink and the user supposedly manifests assent to those terms simply by continuing to use the website. *Id.* In the middle of the spectrum are sign-in wrap agreements, also known as "modified clickwrap agreement[s]," whereby a user is "notified of the existence of the website's terms of use and advise[d] that by making some type of affirmative act, often by clicking a button, she is agreeing to the terms of service." *Moyer v. Chegg, Inc.*, No. 22-CV-09123-JSW, 2023 WL 4771181, at *4 (N.D. Cal. July 25, 2023).

The Terms of Service here is a modified sign-in wrap agreement. *See* Mot. 7; Opp'n 3. Under California law, a sign-in wrap agreement may be an enforceable contract based on inquiry notice if "(1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms." *Berman*, 30 F.4th at 856.

Case No.: 5:24-cv-08113-EJD
ORDER GRANTING MOTION TO COMPEL ARBITRATION
5

1    For the reasons explained below, the Court finds that Defendants met their burden to show that notice of the Terms of Service on the Balance App was reasonably conspicuous and that Plaintiff manifested his assent to be bound by these terms.

### 1.     Reasonably Conspicuous Notice of the Terms

Reasonably conspicuous notice requires that notice is "displayed in a font size and format such that the court can fairly assume that a reasonably prudent Internet user would have seen it," and if there is a hyperlink, the "the fact that a hyperlink is present must be readily apparent." *Berman*, 30 F.4th at 857.  Courts generally analyze two factors to determine whether notice of the terms was reasonable: (1) the context of the transaction, and (2) the visual placement of the notice. *See Keebaugh*, 100 F.4th at 1019.

#### a.     Context of the Transaction

When evaluating sign-in wrap agreements, courts generally evaluate the full context of the transaction, including whether the transaction contemplated "a continuing, forward-looking relationship" governed by terms and conditions. *Sellers*, 289 Cal. Rptr. 3d at 16; *Keebaugh*, 100 F.4th at 1019 ("The context of the transaction is a non-dispositive factor under California law, used to evaluate whether a website's notice is sufficiently conspicuous. Courts must still evaluate the visual aspects of the notice . . . .").

The Court finds that, by creating an account and paying for a subscription membership, the context of the transaction was a continuing, forward-looking relationship likely governed by terms and conditions.  *See, e.g., B.D. v. Blizzard Ent., Inc.*, 292 Cal. Rptr. 3d 47, 64 (Cal. Ct. App. 2022).  Plaintiff does not dispute this point.

Even in this context, however, Defendants still must prove that the visual placement provided Plaintiff the requisite notice.  *See Ramirez v. Trusper, Inc.*, No. 5:24-CV-02012-EJD, 2024 WL 4479862, at *4 (N.D. Cal. Oct. 11, 2024).

Case No.: 5:24-cv-08113-EJD
ORDER GRANTING MOTION TO COMPEL ARBITRATION
6

### b. Visual Placement of the Notice

"A web designer must do more than simply underscore the hyperlinked text in order to ensure that it is sufficiently 'set apart' from the surrounding text." *Sellers*, 289 Cal. Rptr. 3d at 29. "Customary design elements denoting the existence of a hyperlink include the use of a contrasting font color (typically blue) and the use of all capital letters, both of which can alert a user that the particular text differs from other plain text in that it provides a clickable pathway to another webpage." *Berman*, 30 F.4th 857. Because "online providers have complete control over the design of their websites," *Sellers*, 289 Cal. Rptr. 3d at 16, "the onus must be on website owners to put users on notice of the terms to which they wish to bind consumers," *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1179 (9th Cir. 2014). For example, in *Berman*, the Ninth Circuit found that two lines of small gray font that stated, "I understand and agree to the Terms & Conditions which includes mandatory arbitration and Privacy Policy" failed to put the plaintiff on notice of the arbitration provision in part because the underlined terms "appeared in the same gray font as the rest of the sentence, rather than in blue, the color typically used to signify the presence of a hyperlink." *Berman*, 30 F.4th at 856–57 (emphasis in original). However, "when viewed in the context of the overall design and content" of a simpler webpage, courts have also found that underlined text is sufficient. *E.g., Pizarro v. QuinStreet, Inc.*, No. 22-CV-02803-MMC, 2022 WL 3357838, at *3 (N.D. Cal. Aug. 15, 2022) (finding reasonably conspicuous notice on an underlined hyperlink where (1) the hyperlink appeared "directly below" the action button, (2) the hyperlink was set off by "ample white spacing" and "primarily surrounded by text no larger than the notice itself," and (3) the "general design of the website," was "relatively uncluttered and ha[d] a muted, and essentially uniform, color scheme").

Here, the Court finds that the visual placement of the Terms & Conditions hyperlink provides sufficient notice. For illustrative purposes, Plaintiff cites to the following notices of terms and conditions which courts have found inconspicuous:

Case No.: 5:24-cv-08113-EJD
ORDER GRANTING MOTION TO COMPEL ARBITRATION
7






*Berman*, 30 F.4th at 857 (top left); *Sadlock v. Walt Disney Co.*, No. 22-cv-09155-EMC, 2023 WL 4869245, at *10 (N.D. Cal. July 31, 2023) (top right); *Strehl v. Guitar Ctr., Inc.*, No. 23-cv-02603-JAK-RAO, 2023 WL 9700041, at *7 (C.D. Cal. Nov. 3, 2023) (bottom left); *Morrison v. Yippee Ent., Inc.*, No. 24-cv-0797-MMA-KSC, 2024 WL 4647296, at *4 (S.D. Cal. Oct. 31, 2024) (bottom right).

Case No.: 5:24-cv-08113-EJD
ORDER GRANTING MOTION TO COMPEL ARBITRATION
8

1    The Sign Up Page here differs from those in *Berman* and other similar cases for several
2  reasons. Most notably, unlike the examples depicted above, the page here is free from clutter.
3  Instead, there are four simple boxes where users can choose how to set up an account, separated
4  by significant white space surrounding the Terms & Conditions notice. The hyperlinks are also
5  not buried in text or otherwise placed in a confusing location—the sentence containing the Terms
6  & Conditions notice is the only text in the white space of the Sign Up Page. Further, though the
7  font is grey, it appears clearly against the white background.[1] Finally, while the hyperlinks are not
8  marked in blue or underlined, they are in bold with the first letters capitalized, making them stand
9  apart from the other text in the sentence. In the context of the clean and simple format of the page,
10 the Court finds that a reasonably prudent internet user would see the notice and understand that the
11 phrase "**Terms & Conditions**" was a hyperlink to the Terms of Service containing the Arbitration
12 Clause. *See Ghazizadeh v. Coursera, Inc.*, No. 23-CV-05646-EJD, 2024 WL 3455255, at *8
13 (N.D. Cal. June 20, 2024) (collecting cases).

### 2.    **Unambiguous Manifestation of Assent**

The second part of the analysis is whether Plaintiff took some action that unambiguously manifested assent to the hyperlinked Terms of Service. *Oberstein*, 60 F.4th at 517. "A user's click of a button can be construed as an unambiguous manifestation of assent only if the user is explicitly advised that the act of clicking will constitute assent to the terms and conditions of an agreement." *Berman*, 30 F.4th at 857. "[T]he notice must explicitly notify a user of the legal significance of the action she must take to enter into a contractual agreement." *Id.* at 858.

Here, there is no dispute that Plaintiff manifested assent. The notice stated that "[b]y creating your account, you agree to Balance's **Terms & Conditions** and **Privacy Policy**," and Plaintiff proceeded to create an account. Therefore, this second element is satisfied, and the Court finds Defendants have met their burden to show a valid agreement to arbitrate.

---

[1] Though Plaintiff contends the background is actually a light shade of grey, the Court still finds sufficient contrast with the background.

Case No.: 5:24-cv-08113-EJD
ORDER GRANTING MOTION TO COMPEL ARBITRATION
9

### 3. Enforcement by Defendant MindSnacks

Having found that the Arbitration Clause is a valid contract, the Court addresses whether Defendant MindSnacks, as a nonsignatory, may also enforce it.

The Ninth Circuit has "explained that 'nonsignatories of arbitration agreements may be bound by the agreement under ordinary contract and agency principles.'" *Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006) (quoting *Letizia v. Prudential Bache Sec., Inc.*, 802 F.2d 1185, 1187-88 (9th Cir. 1986)). "Agency principles have been held to permit nonsignatory corporations to compel arbitration under arbitration clauses signed by their corporate parents, subsidiaries, or affiliates, at least when the allegations against the nonsignatory corporation do not differ substantially from those against its signatory affiliate." *Prograph International Inc. v. Barhyd*, 928 F. Supp. 983, 990 (N.D. Cal. 1996); *see also NORCAL Mut. Ins. Co. v. Newton*, 84 Cal. App. 4th 64, 76, 100 Cal.Rptr.2d 683 (Cal. 2000) ("The common thread [in holding nonsignatories bound by arbitration contracts] is the existence of an agency or similar relationship between the nonsignatory and one of the parties to the arbitration agreement.").

Here, Plaintiff alleges that Defendant Elevate Labs is an "affiliate" of Defendant MindSnacks, and that together, they "jointly operate, control, program, and run the Balance App." Compl. ¶ 11–13. Plaintiff then goes on to refer to the two companies jointly as "Defendants" in the remainder of the Complaint. There are no individual allegations unique to either Defendant.

Accordingly, because Plaintiff brings identical claims arising from identical conduct, the Court finds that MindSnacks may enforce the arbitration agreement here as an affiliate of the signatory.[2]

### B. Arbitrability

Finally, the parties dispute the arbitrability of Plaintiff's claims. However, because the Arbitration Clause explicitly delegates questions regarding arbitrability to an arbitrator, the Court

---

[2] Plaintiff failed to address Defendants' arguments on this point, instead responding only to Defendants' equitable estoppel argument. Given the Court's finding that MindSnacks has standing to enforce the arbitration clause as an affiliate of Elevate Labs under the doctrines cited in this section, the Court need not address the remaining equitable estoppel arguments.

Case No.: 5:24-cv-08113-EJD
ORDER GRANTING MOTION TO COMPEL ARBITRATION
10

must defer to the arbitrator for resolution of this question.  *See* Arbitration Clause ("The Arbitration Agreement also provides that any arbitration shall be 'conducted in accordance with the rules and regulations promulgated by JAMS unless specifically modified in the Terms of Service.' Under the JAMS rules for consumer arbitrations, the JAMS-appointed arbitrator must decide any disputes regarding the formation, existence, validity, interpretation, or scope of an arbitration agreement.") (internal citations omitted); *see also, e.g.*, *Patrick v. Running Warehouse, LLC*, 93 F.4th 468, 481 (9th Cir. 2024) ("Incorporation of the JAMS arbitration rules by reference constitutes clear and unmistakable evidence that the parties agree to arbitrate arbitrability."); *Happy Puppy LA, Inc. v. Bank of Am.*, No. 2:23-CV-01354-JLS-PD, 2023 WL 6192702, at *5 (C.D. Cal. June 30, 2023), *motion to certify appeal denied sub nom. Happy Puppy LA, Inc. v. Bank of Am., N.A.*, No. 2:23-CV-01354-JLS-PD, 2023 WL 6787778 (C.D. Cal. Sept. 27, 2023) ("[B]ecause the deposit agreement contains a delegation clause, the Court must defer . . . questions of arbitrability to the arbitrator.") (internal quotation marks omitted) (quoting *Informatech Consulting, Inc. v. Bank of Am. Corp.*, 2021 WL 242888 (N.D. Cal. Jan. 25, 2021) and *Momot v. Mastro*, 652 F.3d 982, 988 (9th Cir. 2011)).  Therefore, the Court's inquiry ends here.

## IV. CONCLUSION

Based on the foregoing, the Court **GRANTS** Defendants' motion to compel arbitration.  This case is **STAYED** pending arbitration.  *Smith v. Spizzirri*, 601 U.S. 472, 475–76 (2024) ("When a federal court finds that a dispute is subject to arbitration, and a party has requested a stay of the court proceeding pending arbitration, the court does not have discretion to dismiss the suit on the basis that all the claims are subject to arbitration.").  The parties shall notify the Court within 10 days of reaching a final resolution in the pending arbitration.

**IT IS SO ORDERED.**

Dated: May 27, 2025

EDWARD J. DAVILA
United States District Judge

Case No.: 5:24-cv-08113-EJD
ORDER GRANTING MOTION TO COMPEL ARBITRATION
11